PEOPLE v SMITH

Docket No. 87874. Argued November 8, 1990 (Calendar No. 2). De-
cided May 28, 1991.

Ricky F. Smith pleaded guilty in the Oakland Circuit Court,
Richard D. Kuhn, J., of breaking and entering and of being an
habitual offender, fourth offense. The Court of Appeals,
MICHAEL J. KELLY, P.J., and CAVANAGH, J. (SAWYER, J., dissent-
ing), affirmed, but remanded for resentencing, holding that a
juvenile record automatically expunged pursuant to former
MCR 5.913 cannot be considered at sentencing (Docket No.
105833). The people appeal.

In an opinion by Justice LEVIN, joined by Chief Justice
CAVANAGH and Justice BRICKLEY, and an opinion by Justice
BOYLE, joined by Justices RILEY and GRIFFIN, the Supreme
Court *held:*

An offender's juvenile court record may be considered in
sentencing the offender as an adult.

Justice LEVIN, joined by Chief Justice CAVANAGH and Justice
BRICKLEY, stated:

1. MCL 712A.18e; MSA 27.3178(598.18e) provides that a rec-
ord of a conviction of a juvenile offense may be made available
for a court's consideration in determining the sentence to be
imposed upon conviction of a subsequent offense punishable as
a felony or by imprisonment for more than one year. Former
MCR 5.913, the rule in existence when the defendant was
sentenced, provided an automatic mechanism by which the
juvenile record of a former offender was expunged at the age of
twenty-seven. Case law interpreting that rule held that because
modern sentencing policy attempts to tailor the sentence to the
particular offender and the circumstances of the case, complete
information is necessary to set an individualized sentence and
that rehabilitative goals would not be served by preventing a
sentencing judge from considering information about a defen-
dant's juvenile criminal history.

2. The purpose of the court rule is to prevent a juvenile
record from becoming an obstacle to educational, social, or
employment opportunities. However, when a juvenile offender
appears in court again as an adult, the juvenile offense record

may be considered in imposing sentence because the law contemplates a differentiation in sentencing between first-time offenders and recidivists, juvenile or adult. The provision in the court rule for the automatic expungement of juvenile offense records was not intended to bar consideration by a judge of an expunged juvenile record when sentencing the offender as an adult.

Justice BOYLE, joined by Justices RILEY and GRIFFIN, concurring separately, stated that a sentencing court may use information concerning an adult offender's juvenile record that it has received. Former MCR 5.913 should not be interpreted to limit the sentencing court's authority to obtain information relevant to sentencing from the juvenile court. The apparent purposes for the automatic expunction provision in former MCR 5.913 were to protect the rehabilitated juvenile offender and to cure an administrative storage problem. MCR 5.913 should be interpreted to recognize a distinction in allowing the probate court to expunge its files and in requiring it to retain some record of juvenile entries. There is every reason a sentencing court should be allowed to consider an adult offender's juvenile record. Too narrow an interpretation of the term "expunge" under former MCR 5.913 may preclude that result. While former MCR 5.913 permits destruction of case files, it does not permit destruction of fundamental case data, such as the nature of the proceeding, the ultimate disposition, and whether the defendant was represented by counsel or waived representation. This construction would permit the probate court to maintain its own housekeeping system without imposing a secondary-source rule on probation officers and trial judges.

Reversed and remanded.

Justice MALLETT took no part in the decision of this case.

181 Mich App 223; 448 NW2d 794 (1989) reversed.

172 Mich App 396; 431 NW2d 524 (1988) overruled.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *Richard Thompson,* Prosecuting Attorney, *Michael J. Modelski,* Chief, Appellate Division, and *Janice A. Kabodian,* Assistant Prosecuting Attorney, for the people.

*Jennifer A. Pilette,* Assistant Defender, and *Irving Rosenbaum,* Research Attorney, for the defendant.

LEVIN, J. The question presented is whether the inclusion in the presentence investigation report of the expunged juvenile record of defendant Ricky Franklin Smith requires, under MCR 5.913, now MCR 5.925(E), that he be resentenced.[1]

The Court of Appeals ruled that resentencing was required.[2] We reverse.

I

Smith was convicted on his plea of guilty of breaking and entering,[3] and of being an habitual offender, fourth offense.[4]

Smith argued in the Court of Appeals that he was entitled to be resentenced because the presentence investigation report contained references to his juvenile criminal record which had been automatically expunged pursuant to former MCR 5.913.[5]

The Court observed that one panel of the Court

[1] This Court's order granting leave to appeal limited the grant to the question stated in the accompanying text. *People v Smith #2*, 434 Mich 901 (1990).

[2] *People v Smith,* 181 Mich App 223; 448 NW2d 794 (1989).

[3] MCL 750.110; MSA 28.305.

Smith was charged with breaking and entering a building with intent to commit larceny. He acknowledged that he had broken a window of a warehouse in Pontiac, entered the building, and removed property without permission.

He was sentenced to three and one-half to ten years for breaking and entering. That sentence was vacated when he was sentenced to serve six to thirty years as an habitual offender, fourth offense.

[4] MCL 769.12; MSA 28.1084.

Smith was sentenced as an habitual offender to six to thirty years in prison. He could have been sentenced to six and two-thirds to ten years for breaking and entering as a first-time offender, MCL 750.110; MSA 28.305, *People v Tanner,* 387 Mich 683; 199 NW2d 202 (1972).

[5]    Rule 5.913 Expungement of Records

The court may retain a child's juvenile court delinquency records other than those involving motor vehicle violations until the child is 27, when they must be expunged. The court may retain a child's motor vehicle violation citations and summonses until the child is 19, when they must be expunged.

of Appeals, in *People v Price,* 172 Mich App 396, 399-400; 431 NW2d 524 (1988), had ruled that a juvenile record, automatically expunged pursuant to MCR 5.913,[6] could not be considered at sentenc-

> The court shall expunge neglect records 25 years after its jurisdiction over the last child in the family ends. The court may at any time order the expungement of its own files and records and any law enforcement agency files and records pertaining to a juvenile, including fingerprints and photographs, on a showing of good cause.

MCR 5.913 did not require that *all* juvenile records be destroyed, but only those of the juvenile court. The rule stated that the court "*may* . . . order the expungement of . . . any law enforcement agency files and records pertaining to a juvenile . . . ."

The rule did not *require* the expungement of law enforcement agency records. The present court rule (see n 6) provides that "expunged" juvenile records may remain among the records available at law enforcement agencies.

[6] MCR 5.913 was replaced by MCR 5.925(E), effective January 1, 1988. The rule was amended June 1, 1988.

MCR 5.925(E) now provides:

> (E) Expunging Court Records; Setting Aside Adjudications.
>
> (1) Definitions. When used in this subrule, unless the context otherwise indicates:
>
> (a) "expunge" means to obliterate or destroy;
>
> (b) "set aside" means to negate or rescind.
>
> (2) Court Files and Records.
>
> (a) General. The court may at any time for good cause expunge its own files and records pertaining to an offense by or against a minor other than an adjudicated offense described in subrule (E)(3)(a) and (b).
>
> (b) Delinquency Files and Records. The court must expunge the diversion record of a juvenile within 28 days after the juvenile becomes 17 years of age. The court must expunge the files and records pertaining to a person's juvenile offenses, other than any adjudicated offense described in subrule (E)(3)(a) and (b), when the person becomes 30 years of age.
>
> (c) Child Protective Files and Records. The court shall expunge child protective proceeding files and records pertaining to the minor 25 years after the jurisdiction over the last child in the family ends.
>
> (3) Setting Aside Adjudications.
>
> (a) Life Offenses and Criminal Traffic Violations. The court may not set aside an adjudication of an offense which if committed by an adult would be a felony for which the maximum punishment is life imprisonment, or an offense which if committed by an adult would be a criminal traffic violation.

ing, and that another panel, in *People v Jones,* 173 Mich App 341, 343; 433 NW2d 829 (1988), had concluded that an expunged juvenile record could be included in the presentence investigation report and considered at sentencing.

The majority concluded that *Price* presented the better-reasoned approach. They added that the automatic expungement of juvenile convictions "is delusive and purposeless if law enforcement agencies may continue to use supposedly expunged records against a defendant to his prejudice. Following the *Jones* approach effectively subverts MCR 5.913."[7] The dissenting judge said that he believed that *Jones* represented "the better-reasoned analysis."[8]

## II

The presentence investigation report outlined Smith's previous record, which included twelve juvenile entries.[9] Smith's lawyer indicated that the report was accurate. The sentencing judge said

---

(b) The court may only set aside an adjudication of a reportable juvenile offense pursuant to the procedures of MCL 712A.18e; MSA 27.3178(598.18e).

(c) Upon the entry of an order setting aside an adjudication, the court shall:

(i) send a copy of the order to the Central Records Division of the Department of State Police and to the law enforcement agency involved in the apprehension of the juvenile; and

(ii) expunge its own files and records pertaining to the offense by the juvenile.

[7] *People v Smith, supra,* pp 224-225. The Court said that because it was remanding for resentencing, it was not necessary to consider Smith's remaining issues on appeal.

[8] *Id.,* p 225.

[9] A charge of assault and battery was dismissed. Smith was placed on probation for school truancy. His probation was continued when he was found driving a stolen automobile. No action was taken with respect to a breaking and entering: "[t]he defendant was with an adult when this occurred."

Smith's probation was continued when he was "referred" for riding

that the sentence was imposed because Smith's record included seven prior felonies and three misdemeanors, and he viewed the sentence as appropriate to punish Smith, to protect society, and to deter others from committing like offenses. The judge added that the sentence would be served concurrently with another sentence Smith was then serving.[10]

III

In *People v McFarlin,* 389 Mich 557; 208 NW2d 504 (1973), this Court held that a sentencing judge could properly consider an adult offender's juvenile offense record although the Probate Code provided that a disposition of a child by a probate

a bicycle while under the influence of alcohol and for stealing candy bars. His probation was again continued when he was charged with larceny from a building and carrying a knife. And his probation was once again continued when he was stopped at 2:00 A.M. for violating a curfew, and threatened a police officer with a knife.

No action was taken when it was alleged that he had thrown a pop bottle at a police officer, or when he allegedly broke into a house.

A waiver to adult court was requested and denied when it was alleged that he had knocked down a woman and stolen her purse, but shortly thereafter he was referred to the Boys Training School. Three months later he was listed as a runaway. There was no "contact" with him until he was found January 28, 1972, when he was arrested and charged as an adult. He was convicted on the charge of attempted possession of heroin and placed on two years' probation.

[10] Smith filed a motion for resentencing alleging

(a) that the presentence report failed to contain an offender's version of the offense;

(b) that Smith was impermissibly sentenced on the basis of a presentence investigation report containing his expunged juvenile record;

(c) that Smith's adult record as contained in this report was inaccurate; and

(d) that, despite Smith's habitual offender status, the Sentencing Investigation Report, prepared pursuant to the Michigan Sentencing Guidelines, was misscored with regard to then Prior Record Variable 5, Prior Juvenile Delinquency Adjudications, and Offense Variable 8, Professional/Organized Crime or Ring.

The judge denied the motion.

court shall not be proper evidence against the
child for "any purpose whatever" in any civil,
criminal, or other cause except in a case against
the child under the Juveniles and Juvenile Divi-
sion Chapter of the Probate Code.[11]

When *McFarlin* was decided, the court rules did
not provide for expungement of records. In 1978,
this Court adopted JCR 13,[12] which, as shortly
thereafter amended, provided for the automatic
expungement of the records of a juvenile offender
if, after the seventh year following the discharge
of the child from the court's jurisdiction, there has
been no subsequent felony conviction.[13]

---

[11] A disposition of any child under this chapter, or any evidence
given in such case, shall not in any civil, criminal or any other
cause or proceeding whatever in any court, be lawful or proper
evidence against such child for any purpose whatever, except in
subsequent cases against the same child under this chapter.
[MCL 712A.23; MSA 27.3178(598.23).]

[12] JCR 13 was adopted effective July 23, 1978. Shortly thereafter,
this Court amended the rule, effective September 29, 1978, to provide
that if a person is convicted of a felony after reaching seventeen years
of age, the person is not eligible for automatic expungement. The
amended rule read:

Rule 13. Expunction of Records.
.1 Retention Period.
The court shall retain a child's juvenile delinquency records
other than those involving motor vehicle violations for 7 years
after the child is discharged from the court's jurisdiction. After
the 7th year, if there has been no subsequent felony conviction,
the court shall expunge the records, but the court may earlier
expunge them for good cause shown. The court shall retain a
child's motor vehicle violation citations and summonses until
the child is 19, when they must be expunged. The court shall
expunge neglect records 25 years after its jurisdiction over the
child ends.
.2 New Petitions, Lack of Jurisdiction.
If the court finds the allegations of a petition are not true,
the court must expunge the records pertaining to the petition
within 14 days after its finding. [403 Mich lxxiv.]

[13] Rule 13 presented administrative problems. There was the need
to determine whether an adult had been beyond the jurisdiction of

MCR 5.913,[14] the rule in effect at the time Smith was sentenced, replaced JCR 13.[15] Shortly after the adoption of this rule, the Legislature enacted § 18e of the Juveniles and Juvenile Division Chapter of the Probate Code.[16]

Section 18e provides that a juvenile court judge may not set aside a conviction of a juvenile offense which if committed by an adult would be a felony for which the maximum punishment is life imprisonment, or an adjudication for a traffic offense involving the operation of a motor vehicle that is a felony or misdemeanor. Other juvenile offenses that, while serious, are not potentially life-sentence offenses (designated as "reportable" in the court rule), may be set aside by a juvenile court judge subject to the limitations of and pursuant to § 18e. Such offenses would include breaking and entering.

While § 18e makes it a misdemeanor knowingly to use a juvenile offense that has been set aside except as permitted in § 18e(13), subsection (d) provides that a record of a conviction of a juvenile offense shall be made available "[f]or the court's consideration in determining the sentence to be imposed upon conviction for a subsequent offense that is punishable as a felony or by imprisonment for more than 1 year."

Section 18e, a legislative enactment, expresses the public policy of this state. This Court, follow-

the juvenile court for seven years. There was the further need to determine whether the person had any felony convictions.

[14] See n 5 for text.

[15] Several years later, the Juvenile Court Rules Committee submitted a new set of juvenile court rules, which were adopted by this Court on July 1, 1987, to take effect January 1, 1988. The staff comment to the new rule, MCR 5.925(E), stated that "[t]he rule no longer *expressly* authorizes the juvenile court to order expungement of law enforcement files and records." (Emphasis added.)

[16] 1988 PA 72, effective June 1, 1988, MCL 712A.18e; MSA 27.3178(598.18e).

ing the enactment of § 18e, adopted MCR 5.925(E)[17] in lieu of MCR 5.913, the rule extant when Smith was sentenced.

### IV

In *People v Price, supra,* p 399, relied on by the Court of Appeals in the instant case, the Court, recognizing that the general rule reflected in *McFarlin* is that a defendant's juvenile record may be considered by a sentencing judge in imposing a sentence for an adult offense, stated that this Court had "in no uncertain terms, placed a limit on the relevance of one's past juvenile record." The Court said that "MCR 5.913 provided an automatic mechanism by which the juvenile record of a former offender was expunged at the age of twenty-seven, the age at which an individual has been an 'adult' for purposes of criminal penalty for a period of ten years." The Court continued that "[i]n our view, an unexpunged juvenile record may create a lifelong handicap because of the stigma it carries. We believe former MCR 5.913 was designed to remedy such a situation."

In *People v Jones,* another panel of the Court of Appeals held that a juvenile record, automatically expunged at age twenty-seven, was properly included in a thirty-one-year-old defendant's presentence report. The Court said, relying on *McFarlin,* that "[m]odern sentencing policy attempts to tailor the sentence to the particular offender and the circumstances of the case." *People v Jones, supra,* p 343. The Court added that "complete information is necessary to set an individualized sentence and that rehabilitative goals would not be served by preventing a sentencing judge from

---

[17] See n 6 for text.

considering information about a defendant's juvenile criminal history." *Id.*

## V

We conclude that the *Jones* panel reached the correct result and that *Price* should no longer be followed.

Rules calling for the "expungement" or destruction of juvenile records have been enacted or adopted in many states. Some states have enacted "sealing" statutes or have otherwise imposed restrictions that would leave juvenile records unimpaired, but would restrict their use in court proceedings.[18] Literature describing these rules indicates that their "basic purpose . . . is to overcome the stigma of delinquency."[19] At the same time, however, these rules "have generally been construed as not being applicable to the use of a juvenile court record for sentencing purposes. Accordingly, almost all the courts . . . have taken the position that an accused's juvenile court record may be taken into consideration by a judge in sentencing the accused for an adult offense."[20]

The general judicial construction of expungement statutes and rules restricting the use of a juvenile offense record indicates, by permitting the use of such offense records when sentencing a juvenile offender as an adult, that the "stigma of

---

[18] See, e.g., MCL 712A.23; MSA 27.3178(598.23) at issue in *McFarlin.*

[19] Sinclair, *The use of juvenile adjudications for impeachment and sentencing,* 22 Santa Clara L R 419, 424 (1982).

[20] Anno: *Consideration of accused's juvenile court record in sentencing for offense committed as adult,* 64 ALR3d 1291, 1294.

See, e.g., *Penn v Alaska,* 588 P2d 288 (Alas, 1978); *Sullivan v Indiana,* 540 NE2d 1242, 1244 (Ind, 1989); *Missouri v Webber,* 605 SW2d 179, 183 (Mo, 1980); *State v Koehmstedt,* 297 NW2d 315, 319 (ND, 1980); *Hawaii v Nobriga,* 56 Hawaii 75, 82-83; 527 P2d 1269 (1974).

delinquency" with which the statutes and rules are concerned is the social or civil stigma, and economic disabilities that accompany a criminal record.[21]

The purpose of the court rule, and of similar rules or statutes in other jurisdictions, is to prevent a juvenile record from becoming an obstacle to educational, social, or employment opportunities.[22] When, however, a juvenile offender appears in court again as an adult, his juvenile offense record may be considered in imposing sentence. The law contemplates a differentiation in sentencing between first-time offenders and recidivists, juvenile or adult.

In *McFarlin, supra,* pp 574-575, this Court said:

> If—in an effort to enforce an absolute restriction on the use of juvenile records—we were to bar all waivers of the restriction and prohibit any consideration by the sentencing judge of juvenile history, the best and the worst sentencing risks might be indistinguishable. A judge hesitant to take risks, uncertain whether a young adult offender is a first offender, might sentence him to prison when, with complete information, he would place him on probation or sentence him under the Holmes [Youthful Trainee] Act. [MCL 762.11; MSA 28.853(11).]
>
> The modern view of sentencing is that the sentence should be tailored to the particular circumstances of the case and the offender in an effort to balance both society's need for protection and its

---

[21] See, e.g., *Doe v Webster,* 196 US App DC 319, 327, 332; 606 F2d 1226 (1979); *United States v Madison,* 689 F2d 1300, 1315 (CA 7, 1982); *United States v Henderson,* 482 F Supp 234, 242 (D NJ, 1979); *United States v Campbell,* 724 F2d 812 (CA 9, 1984); *United States v Gardner,* 860 F2d 1391 (CA 7, 1988).

[22] See 14 Am Jur, Trials, § 81, p 701.

But see, § 18e, permitting consideration of an expunged juvenile offense record in a licensing function conducted by "an agency of the judicial branch of state government" or by a law enforcement agency if the juvenile offender applies for employment with the law enforcement agency. MCL 712A.18e(13); MSA 27.3178(598.18e)(13).

interest in maximizing the offender's rehabilitative potential. . . . A judge needs complete information to set a proper individualized sentence. A defendant's juvenile court history may reveal a pattern of lawbreaking and his response to previous rehabilitative efforts. This, together with information concerning underlying social or family difficulties, and a host of other facts are essential to an informed sentencing decision, especially if the offender is a young adult.

In providing, in JCR 13, adopted five years after *McFarlin* was decided and in MCR 5.913, adopted in 1985, for the automatic expungement of a juvenile offense record when the offender is twenty-seven, this Court did not intend to bar a sentencing judge from considering, when sentencing an adult offender, the offender's juvenile offense record which the Court had so recently, in *McFarlin,* authorized the judge to consider. JCR 13 simply provided that the offense record would be automatically expunged without elaborating on what expungement meant. In light of the Court's recent expression in *McFarlin,* it is clear that the Court did not mean or intend that the expunged record could not be considered in sentencing the offender as an adult.

Reversed and remanded to the Court of Appeals for consideration of the remaining issues advanced by Smith on his appeal to that Court.

CAVANAGH, C.J., and BRICKLEY, J., concurred with LEVIN, J.

BOYLE, J. (*concurring separately*). While I agree with the result reached by the lead opinion, I write separately because it is unclear how the lead opinion interprets the term "expunge" under former MCR 5.913. If it interprets that term as

requiring the probate court to physically destroy all evidence of a juvenile record automatically once a juvenile offender has reached age twenty-seven and therefore allows use of an adjudication at sentencing only if a probation officer can discover the information from another source, then I disagree.

If the probate court destroys all information at the age of twenty-seven, there is no secondary source unless the twenty-seven-year-old defendant has previously been convicted as an adult and the previous presentence report contained the juvenile record. Thus, for a defendant first convicted as an adult at twenty-seven, the "secondary-source" rule means that the trial judge will have no access to the probate court information which may bear on "an informed sentencing decision," *People v McFarlin,* 389 Mich 557, 575; 208 NW2d 504 (1973).

Moreover, if a sentence was imposed before the defendant was twenty-seven years old, the efficacy of the secondary-source rule depends on the likelihood of locating the source, which in turn depends on whether the defendant admits to it or if the probation officer happens to find it. Thus, for example, if a defendant was over twenty-seven at the time of conviction in Detroit and had a prior conviction at the age of twenty-four in Grand Rapids and a juvenile record there, the Detroit court's access to that information would depend on the fortuity of the defendant's revealing the fact that he had been convicted in Grand Rapids, or the officer's locating the presentence report in the Kent Circuit Court from some other source. I fail to see what interest is served by forcing the probation officer, who is charged with the duty of investigating the defendant's "antecedents, character, and circumstances," MCL 771.14(1); MSA

28.1144(1), to conduct a circuitous search for information directly available from the probate court.[1]

The issue in this case is whether a sentencing court can use information concerning an adult offender's juvenile record when it has received such information. I agree with the lead opinion that the answer is yes. Even before the adoption of MCR 5.913, this Court determined in *People v McFarlin, supra* at 574-575, that

> [t]he modern view of sentencing is that the sentence should be tailored to the particular circumstances of the case and the offender in an effort to balance both society's need for protection and its interest in maximizing the offender's rehabilitative potential. . . . A judge needs complete information to set a proper individualized sentence. A defendant's juvenile court history may reveal a pattern of lawbreaking and his response to previous rehabilitative efforts. This, together with [other] information . . . [is] essential to an informed sentencing decision . . . .

Former MCR 5.913 should not be interpreted as a limit on the sentencing court's authority to obtain information relevant to sentencing from the juvenile court.[2]

Additionally, interpreting MCR 5.913 to permit the physical destruction of all juvenile court records, perpetuates the frequently asserted claim that the defendant is entitled to be resentenced because he was not represented by counsel and did

---

[1] The Court's proportionality analysis in *People v Milbourn,* 435 Mich 630, 661; 461 NW2d 1 (1990), underscores the need for accurate data permitting identification whether a sentence is "disproportionately severe or lenient."

[2] Indeed, although the people do not advance the claim, it is arguable that both this limitation and the portion of the rule allowing the probate court to direct expungement of law enforcement files are not practice and procedure and are in conflict with statutory authority.

not waive counsel when his juvenile offense was adjudicated. If there is no record available because of its physical destruction, the prosecutor may be unable to rebut this contention.[3]

The apparent purposes for the automatic expunction provision in former MCR 5.913 were to protect the rehabilitated juvenile offender and to cure an administrative problem, i.e., the probate court's concern regarding space for its files. Where the juvenile is subsequently convicted as an adult, the first concern no longer obtains. This Court should accommodate the second concern by reading the rule to create a distinction that allows the probate court to expunge its "files" and requires it to retain some "record" of juvenile entries such as it would typically have for case control purposes. By allowing the latter to be maintained, the probate court's administrative concern regarding available space can be alleviated without infringing upon the sentencing court's interest in juvenile entries listed for an adult offender.

---

[3] Although an uncounseled misdemeanor conviction is not invalid unless a term of imprisonment is imposed, *Scott v Illinois,* 440 US 367; 99 S Ct 1158; 59 L Ed 2d 383 (1979), it is unclear whether a prior uncounseled juvenile adjudication is constitutionally invalid. *People v Covington,* 144 Mich App 652; 376 NW2d 178 (1985), lv den 426 Mich 866 (1986).

Federal cases have held that

> evidence of a standard practice or customary procedure in a particular jurisdiction can be used to establish the probable constitutional validity of a prior conviction. Courts have also held that the defendant must carry the burden of establishing the invalidity of a prior conviction when the government demonstrates habit and custom that meet constitutional standards. (See, e.g., *United States v Dickens,* 879 F2d 410 [CA 8, 1989]; *United States v Davenport,* 884 F2d 121 [CA 4, 1989].) [United States Sentencing Comm, Federal Sentencing Guidelines Manual (1991 ed), p 614.]

In *McFarlin, supra* at 571, this Court acknowledged that Michigan's courts have provided for counsel in juvenile cases "since juvenile courts were first established in this state."

The current court rule reflects the legislative intent evidenced in MCL 712A.18e; MSA 27.3178(598.18e) and prohibits the automatic expunction of any life offense, criminal traffic violation, or adjudicated "[r]eportable juvenile offense."[4] MCR 5.925(E)(2)(b). In addition, if an adjudicated "[r]eportable juvenile offense" is set aside by the probate court according to the procedures set out in MCL 712A.18e; MSA 27.3178(598.18e), the court must

> send a copy of the order to the Central Records Division of the Department of State Police and to the law enforcement agency involved in the apprehension of the juvenile . . . . [MCR 5.925(E)(3)(c)(i).]

MCL 712A.18e(13)(d); MSA 27.3178(598.18e)(13)(d) also requires the State Police to maintain a nonpublic record of that order and the correlative juvenile record which *shall* be made available to a court of competent jurisdiction for sentencing purposes. MCR 5.925(F) provides that when the juvenile offense record of an adult convicted of a crime is made available "to the appropriate agency . . . the record must state whether, as to each adjudication, the juvenile had counsel or voluntarily waived counsel." When read together, it becomes evident that MCL 712A.18e; MSA 27.3178(598.18e) and the current court rule impose reporting requirements that insure that, in circumstances similar to the instant case, the sentencing court will receive information concerning an adult offender's juvenile record.

Consequently, although there is every reason a sentencing court should be allowed to consider an

---

[4] A "[r]eportable juvenile offense" is defined in MCR 5.903(B)(6)(a)-(s) and includes nineteen serious felonies.

adult offender's juvenile record, too narrow an interpretation of the term "expunge" under former MCR 5.913 may preclude that result. It is in "window cases," such as this, falling between *McFarlin* and MCR 5.925, where the presence or absence of a juvenile court record is critical.

I would hold that, while the rule permits destruction of case "files and records," it does not permit destruction of fundamental case data, such as the nature of the proceeding, the ultimate disposition, and whether the defendant was represented by counsel or waived representation. This construction would permit the probate court to maintain its own housekeeping system without imposing a "secondary source" rule on probation officers and trial judges.

RILEY and GRIFFIN, JJ., concurred with BOYLE, J.

MALLETT, J., took no part in the decision of this case.