## PEOPLE v BENSON

Docket No. 136656. Submitted January 12, 1993, at Detroit. Decided July 19, 1993, at 9:10 A.M. Leave to appeal sought.

Charles J. Benson was convicted by a jury in the Recorder's Court for the City of Detroit, Michael J. Talbot, J., of armed robbery and was sentenced to one hundred to two hundred years in prison. He appealed, and the Court of Appeals, SAW-YER, P.J., and BEASLEY and A.L. GILBERT, JJ., affirmed. 180 Mich App 433 (1989). The Supreme Court, in lieu of granting leave to appeal, reversed in part the judgments of the Court of Appeals and the Recorder's Court and remanded the case to the trial court for resentencing. 434 Mich 903 (1990). On remand, the trial court, Michael J. Talbot, J., sentenced the defendant to fifty to one hundred years in prison. The defendant appealed.

The Court of Appeals *held*:

1. The fifty-year minimum sentence is twice the maximum of the sentencing guidelines' recommended minimum sentence. The reasons for the upward departure stated by the trial court, the protection of society and punishment, are inadequate and nothing more than boiler plate language that doesn't tell why the defendant was sentenced to a prison term twice the maximum of the guidelines' minimum. There is no indication that this case involves circumstances not adequately embodied within the variables used to score the guidelines. If departure is appropriate in this case, nothing in the record indicates why the departure should be so great.

2. The sentence must be vacated and the case remanded for resentencing because the defendant was sentenced twice by the same trial judge, the trial judge failed to exercise properly the judicial function that requires reasoned decision making, and the proceedings on remand will be before a successor judge.

3. A sentence of fifty to one hundred years is not necessarily inappropriate in this case. Such a sentence does not violate the requirements of *People v Moore,* 432 Mich 311 (1989). If the court, on remand, chooses to depart from the guidelines, it

REFERENCES

Am Jur 2d, Criminal Law, §§ 535-538, 580.
See ALR Index under Sentence and Punishment.

should comply with *People v Milbourn,* 435 Mich 630 (1990), and *People v Harris,* 190 Mich App 652 (1991), by articulating its reasons on the record.

4. The trial court on remand must respond to the defendant's objections regarding the presentence report, and it may consider the defendant's juvenile record and reversed convictions in imposing sentence.

Remanded for resentencing.

GRIFFIN, P.J., dissenting, stated that the majority exceeded its authority in vacating the sentence and remanding for resentencing. A remand for resentencing may be ordered only with regard to sentences that are invalid, and the majority did not find the sentence to be invalid. The trial court's articulation of the reasons for its sentence was more than sufficient to facilitate appellate review, making a remand for further articulation unnecessary. The sentence imposed did not result from an abuse of discretion because the sentencing guidelines do not account adequately for the defendant's extensive criminal record. The sentence was proportionate and should be affirmed.

SENTENCES — PROPORTIONALITY — RESENTENCING — VACATING SENTENCES.

The Court of Appeals may remand an action to a trial court for articulation of how a sentence that is not within the sentencing guidelines' recommended range satisfies the proportionality standards of *People v Milbourn,* 435 Mich 630 (1990), and *People v Harris,* 190 Mich App 652 (1991), and whether the defendant would be entitled to resentencing under those standards; where a defendant has been sentenced twice by the same trial judge, the trial judge failed to exercise properly the judicial function that requires reasoned decision making in order to bring the case within the minimally precise requirements of the sentencing guidelines, and where, on remand, the action will be before a successor judge, the Court of Appeals may vacate the sentence and remand the case for resentencing.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, and *Janice M. Joyce Bartee,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Richard B. Ginsberg*), for the defendant on appeal.

Before: Griffin, P.J., and Shepherd and Fitz-
gerald, JJ.

Shepherd, J. Defendant was originally charged
with armed robbery, MCL 750.529; MSA 28.797,
and possession of a firearm during the commission
of a felony, MCL 750.227b; MSA 28.424(2). Follow-
ing a jury trial, he was convicted of armed robbery
and sentenced by the trial court to one hundred to
two hundred years in prison. After this Court
affirmed the conviction and sentence, 180 Mich
App 433; 447 NW2d 755 (1989), the Supreme Court
reversed in part the judgments of the trial court
and the Court of Appeals and remanded for resen-
tencing, 434 Mich 903 (1990). On remand, the trial
court sentenced defendant to a prison term of fifty
to one hundred years. Thereafter, a successor trial
judge denied a motion for rehearing. Defendant
again appeals his sentence. We vacate the sen-
tence and remand for resentencing.

I

In *People v Milbourn,* 435 Mich 630, 635-636;
461 NW2d 1 (1990), the Supreme Court set forth
the principle of proportionality, requiring sen-
tences imposed by trial courts to be proportionate
to the seriousness of the circumstances surround-
ing the offense and the offender. The Court, pp
653-654, stated:

> The trial court appropriately exercises the dis-
> cretion left to it by the Legislature *not* by applying
> its own philosophy of sentencing, but by determin-
> ing where, on the continuum from the least to the
> most serious situations, an individual case falls
> and by sentencing the offender in accordance with
> this determination. [Emphasis in original.]

In determining whether a sentence is propor-

tionate to the seriousness of the offense and the
offender under the principle of proportionality, the
Court in *Milbourn,* p 656, recommended the use of
the sentencing guidelines:

> The guidelines represent the actual sentencing
> practices of the judiciary, and we believe that the
> second edition of the sentencing guidelines is the
> best "barometer" of where on the continuum from
> the least to the most threatening circumstances a
> given case falls.

In reflecting actual sentencing practices, we note
that the sentencing guidelines are nothing more
than a description of what actually happens in
seventy-five percent of the cases. As Mr. James
McComb, a member of the Supreme Court guide-
lines staff, explained:

> The first edition of the sentencing guidelines
> contains sentence recommendations that were
> based upon data collected during 1977 by the
> [Michigan Felony Sentencing Project]. To develop
> the sentence ranges found in the second edition,
> the variables as scored in the second edition were
> applied retrospectively, to the new data collected
> by the [Sentencing Guidelines Advisory Commit-
> tee] from 1984 through 1987. In this way, it was
> possible to "fine-tune" the sentence recommenda-
> tions so that they corresponded with actual sen-
> tencing practices.
>
> Using data from over 50,000 actual cases the
> range of actual sentences, for each cell of each
> grid, was determined. Where possible, the ranges
> were set so that they encompassed at least 75% of
> the actual sentences and that departures above
> and below would be of a similar magnitude. No
> attempt was made to make the recommended
> sentences more lenient or severe. Instead, the
> recommended ranges represent the current prac-
> tice of the majority of the Michigan Circuit and

Recorder's Court judges. [McComb, *An Overview of the Second Edition of the Michigan Sentencing Guidelines,* 67 Mich B J 863, 866-867 (September, 1988).]

Thus, although the sentencing guidelines purport to give guidance to the trial courts on what an appropriate sentence ought to be, it is evident that the guidelines say nothing about the appropriateness of any given sentence, but merely reflect what judges have actually done in seventy-five percent of the cases. Within the guidelines' range, sentences are presumptively neither excessively severe nor unfairly disparate. *People v Broden,* 428 Mich 343, 354; 408 NW2d 789 (1987).

A sentencing court is entitled to depart from the guidelines' range whenever the recommended range is considered an inadequate reflection of the proportionate seriousness of the offense. *People v Witcher,* 192 Mich App 307, 308-309; 480 NW2d 636 (1991). Where a sentencing court departs from the guidelines' range, it must articulate its reasons both on the record at sentencing and in the sentencing information report (SIR). *People v Fleming,* 428 Mich 408, 428; 410 NW2d 266 (1987). In *Milbourn,* pp 659-660, the Court noted:

> Where there is a departure from the sentencing guidelines, an appellate court's first inquiry should be whether the case involves circumstances that are not adequately embodied within the variables used to score the guidelines. A departure from the recommended range in the absence of factors not adequately reflected in the guidelines should alert the appellate court to the possibility that the trial court has violated the principle of proportionality and thus abused its sentencing discretion. Even where some departure appears to be appropriate, the extent of the departure (rather than the fact of the departure itself) may embody a violation of the principle of proportionality.

In order to implement the *Milbourn* proportionality test, this Court set forth a three-part test in *People v Harris,* 190 Mich App 652, 668-669; 476 NW2d 767 (1991):

> 1. If the sentence is to be within the guidelines, where on the guidelines range should the sentence fall?
> 2. What unique facts exist that are not already adequately reflected in the guidelines, and why do such facts justify any departure from the guidelines?
> 3. If there is to be a departure, what should be its magnitude and the justification for the specific departure imposed?

We should point out that *Harris* does not impose any new requirements other than those found in *Milbourn,* but merely provides a systematic method for arriving at a sentence in accordance with the *Milbourn* standards. As we said in *Harris,* p 669.

> The inquiry that we impose here will enable the trial judge to comply with the mandate of *Milbourn* in a manner that reduces the risk of irrational sentencing that is either too low or too high for the given case.
> We do not hold that the [*Harris* analysis] must be followed to the letter in every case. However, all of the factors mentioned in the analysis are contained in *Milbourn* and must, in some manner, be included in the trial judge's articulation on the record of the reasons for the sentence.

II

In this case, the guidelines' range was calculated by the trial court to be ten to twenty-five years or

life. The fifty-year minimum sentence imposed by the trial court was thus twice the maximum of the guidelines' minimum. In exceeding the guidelines' recommended range, the trial court stated on the record and in the SIR that the reasons for the upward departure were the "protection of society" and "punishment."

In our view, the trial court failed to adequately articulate reasons for its departure from the recommended guidelines' range. *Milbourn, supra.* It is evident that under the *Milbourn/Harris* analysis, the trial court is required to make reasoned sentencing decisions. Here, the trial court's "reasons" for exceeding the guidelines are nothing more than boiler plate language that does not tell us anything about why this particular defendant is being sentenced to a prison term twice the maximum of the guidelines' minimum. Given that the guidelines are based upon what happens in seventy-five percent of the cases of armed robbery, the question is what is there about this case that makes it worse than seventy-five percent of the cases? Although the trial court cited defendant's lengthy criminal history, his lack of a consistent and reputable work history, his questionable drug use, and his disciplinary problems while in prison, it made no effort to tell us why this particular defendant has to receive a sentence greater than those received in seventy-five percent of the cases, and, specifically, why must it be an additional twenty-five years?

We do not wish to imply that the court must make a precise analysis of how this case compares to seventy-five percent of all similar cases. The seventy-five-percent figure is itself nothing more than a guideline. It tells the trial court that a sentence at the outer limits of the guidelines covers seventy-five percent of similar situations

and that there may be a departure if the case at hand is substantially worse than the average case of a similar nature.

Moreover, we note that there is nothing in the trial court's remarks on the record or in the SIR to indicate that this case involves circumstances that are not adequately embodied within the variables used to score the guidelines. *Milbourn, supra,* pp 659-660. Thus, even if departure were appropriate in this case, there is nothing on the record to indicate why the extent of the departure should be so great. By taking refuge in the boiler plate language of "protection of society" and "punishment," the trial court failed to shed any light on these matters, abdicating its judicial function that requires it to engage in reasoned decision making.

The problem becomes particularly acute when we take into account that the guidelines as originally calculated in this case allow for a minimum sentence of anywhere between ten and twenty-five years. The actual sentence, therefore, could be not twenty-five, but forty years greater than a sentence that is presumptively valid under the guidelines. There is nothing in the guidelines that tells us where along the continuum from zero to seventy-five percent of the cases this case falls. All that one can say is that in approximately seventy-five percent of similar cases, the trial courts imposed a minimum sentence somewhere between ten and twenty-five years. Under these circumstances, the wider the range, the less reliable the guidelines are as a barometer. However, that is an aspect of the guidelines that we as a Court of Appeals cannot address. All we can do is insist that trial courts attempt through reasoned decision making to bring the cases before them within the minimally precise requirements of the guidelines.

### III

Under normal circumstances, we would simply remand the case to the trial court for articulation of how the sentence satisfies the *Milbourn/Harris* standards and whether defendant would be entitled to resentencing under those standards. *People v Martin,* 440 Mich 868; 486 NW2d 734 (1992), and *People v Herron,* 440 Mich 868; 486 NW2d 734 (1992). Because defendant was sentenced twice by the same trial judge, because that trial judge failed to exercise properly his judicial function, and because the proceedings on remand from this Court will be before a successor judge, we believe that it is necessary to vacate the sentence and remand for resentencing.

In remanding we are not saying that a sentence of fifty to one hundred years is inappropriate in this case. Contrary to defendant's claim, such a sentence does not violate the requirements of *People v Moore,* 432 Mich 311; 439 NW2d 684 (1989). See *People v Martinez,* 193 Mich App 377; 485 NW2d 124 (1992). All we are saying is that the trial court did not adequately justify the sentence imposed. If on remand the trial court chooses to depart from the guidelines, it should comply with *Milbourn* and *Harris* by articulating its reasons on the record.

This was a serious offense and defendant deserves a lengthy prison term. Nevertheless, the guidelines were adopted not to allow criminals to avoid punishment but to bring order and rationality to sentencing. A guidelines' range that allows a minimum sentence of twenty-five years acknowledges the seriousness of the offense. We respectfully suggest that a twenty-five-year prison term is a long sentence and not a mere slap on the wrist. The guidelines further allow a court to depart

from the twenty-five-year minimum upon the reasoned exercise of sound discretion. It is the failure of such a process in this case that constrains us to remand for resentencing again.

The task of the trial court at the first resentencing was to determine whether a departure from the guidelines was appropriate. Its analysis on this point was minimal. Then, it was to determine the precise magnitude of the departure. In that respect, its analysis was almost nonexistent. The trial court gave an additional twenty-five years because of little more than the fact that defendant is a bad man who committed a serious offense. If appellate review of sentencing has any meaning, the Court of Appeals must be told by trial courts just how bad they view the defendant to be and why the particular magnitude of the departure from the guidelines' range is required. It is not our function to search the record looking for a reason to affirm or reverse. It is the function of the trial court to furnish us with all of its reasons in a manner that we can readily see the merits or lack of merits of the sentencing decision.

On remand, we further note that the trial court should respond to defendant's objections regarding the presentence report. However, contrary to defendant's claim, the trial court may consider defendant's juvenile record in sentencing him as an adult. *People v Smith,* 437 Mich 293; 470 NW2d 70 (1991). Finally, the trial court may also consider reversed convictions in imposing the sentence. *People v Butts,* 144 Mich App 637, 641; 376 NW2d 176 (1985).

Sentence vacated and case remanded for resentencing. We do not retain jurisdiction.

Fitzgerald, J., concurred.

Griffin, P.J. *(dissenting).* This Court has again

exceeded its authority by vacating defendant's
sentence and remanding the case for resentencing.
No court has the authority to vacate a valid
sentence. A remand for resentencing may be or-
dered only with regard to those sentences that are
invalid. *In re Dana Jenkins,* 438 Mich 364, 369;
475 NW2d 279 (1991), *People v Adams,* 441 Mich
916; 497 NW2d 182 (1993), *People v Martin,* 440
Mich 868; 486 NW2d 734 (1992), and *People v
Herron,* 440 Mich 868; 486 NW2d 734 (1992).

The majority's opinion contains no finding that
the sentence at issue is invalid. Rather, the focus
of the majority's opinion is that the trial court
failed to articulate adequate reasons for the sen-
tence imposed. Specifically, the majority vacates
the sentence and orders resentencing because "the
trial court's 'reasons' for exceeding the guidelines
are nothing more than boiler plate language that
does not tell us anything about why this particular
defendant is being sentenced to a prison term
twice the maximum of the guidelines' minimum."
*Ante,* p 604. I disagree. Two sentences later in the
majority's opinion, Judge SHEPHERD summarizes
the following additional reasons given for the sen-
tence:

> Although the trial court cited [1] defendant's
> lengthy criminal history, [2] his lack of a consis-
> tent and reputable work history, [3] his questiona-
> ble drug use, and [4] his disciplinary problems
> while in prison, it made no effort to tell us why
> this particular defendant has to receive a sentence
> greater than those received in seventy-five percent
> of the cases, and specifically why must it be an
> additional twenty-five years? *Ante,* p 604.

The sentencing court also stated that the sen-
tence was imposed in view of (5) the dangerousness
of defendant, (6) for purposes of punishment, and

(7) for the protection of society. The court noted (8) the aggravating facts of the crime, including an assault and battery upon and a threat to kill the victim, and (9) the defendant's parole status at the time he committed this offense. I find the articulation more than sufficient to facilitate appellate review. A remand for further articulation is therefore unnecessary. *People v Triplett,* 432 Mich 568; 442 NW2d 622 (1989). *People v Coles,* 417 Mich 523, 549; 339 NW2d 440 (1983).

The majority suggests, in dicta, that sentencing courts should justify all sentences by comparing them with seventy-five percent of similar cases. If possible at all, such a task would be unduly burdensome and unworkable in practice.

With regard to the sentence itself, I find no abuse of sentencing discretion. *People v Milbourn,* 435 Mich 630; 461 NW2d 1 (1990). Defendant's presentence report states, inter alia, the following:

> Charles Jerome Benson is . . . a consistently repetitive offender. His offenses are not harmless to others, such as shoplifting or loitering, but offenses meriting the label of capital crimes, that is, robbery armed. The within charge accounts for the subject's tenth conviction for robbery armed. Just a few days ago, on 3-9-87, he was also convicted of the habitual offender statute out of Oakland County after initially being convicted of larceny over $100.00. In those cases, he received a 3-15 year prison term, for which he is now serving. His parole officer stated that the defendant was totally uncooperative on parole, failing to make any efforts to improve his situation.
>
> \*   \*   \*
>
> PRIOR CRIMINAL RECORD:
> Adult Record:
> 4-10-74
> Detroit, Mi., Assault With a Dangerous Weapon, convicted of Aggravated Assault; 5-9-74, 3 years

probation with the first 30 days in the Detroit House of Correction; 9-3-76, found guilty of Violation of Probation and given an 8 month term in the Detroit House of Correction.

6-28-77

Detroit, Mi., 8 Counts Felony Firearm; 2 years in prison one each count; 6-29-77, sentence vacated by the Court.

6-28-77

Detroit, Mi., 8 Counts Robbery Armed; a period of 10 years on each count; sentenced to 3-10 years on each count; paroled 2-26-81.

3-3-81

Detroit, Mi., Robbery Armed; 10-5-81, convicted of same; 11-6-81, 5-15 years, Docket No. 81-01632, paroled 12-2-85.

9-29-86

Ferndale, Mi., Larceny Over $100; pled guilty to same on 2-5-87; sentence vacated on 3-9-87 by Judge Lippit of the Oakland County Circuit Court in Pontiac, Docket No. 86-75884FH.

3-9-87

Pontiac, Mi.,—Oakland County Circuit Court, Habitual Offender; 3-15 years, Docket No. 86-75884FH.

At the time of the within offense, the defendant was on parole, having been released from prison on parole on 12-2-85.

The sentencing guidelines do not adequately account for defendant's extensive prior criminal record. The prior record variables of the sentencing guidelines do not address a prior criminal record as lengthy as the defendant's. After a thorough review of the record and the presentence report, I find that defendant's fifty- to one-hundred-year sentence is proportionate to the circumstances surrounding the offense and the offender. *Milbourn, supra.*

I would affirm defendant's sentence and, therefore, respectfully dissent.