# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

WESLEY LAMARR BANKS,

        Defendant-Appellant.

UNPUBLISHED
January 11, 2018

No.  333776
Wayne Circuit Court
LC No.  16-001897-01-FC

Before:  STEPHENS, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions for unarmed robbery, MCL 750.530, and unlawful imprisonment, MCL 750.349b, for which he received concurrent sentences of 100 to 180 months.  We affirm defendant's convictions, but vacate his judgment of sentence and remand for resentencing.

On January 15, 2016, at around midnight, Jacarr Worthy was at a Shell station in Detroit. Worthy testified that, as he was getting into his car after pumping gas, two unknown men entered the vehicle on the passenger side—defendant in the front seat and the other man in the back seat. Defendant pulled a gun with a black handle slightly out of his jacket pocket as he demanded Worthy's unlocked cell phone, debit card, and wallet.  At the robbers' orders, Worthy then drove to a liquor store down the road but it was closed.  He was then ordered to drive to the Citgo gas station less than one mile away, and enter through the back alley.  During this time, defendant held the gun low and pointed at Worthy.

Once at the gas station, the robbers demanded the pin number for Worthy's debit card and then the man in the back seat took Worthy's phone and debit card into the station.  When the man could not get the debit card to work, he called defendant.  Defendant told Worthy that they would shoot or kill him if they could not get money using his card.  Worthy was afraid and told defendant he would help them because he wanted to live.  Leaving the car running, defendant exited the vehicle with Worthy and walked a few steps ahead of Worthy.  Once defendant got far enough in front of him, Worthy ran back to the car and drove away.

Both defendant and the other man chased Worthy and tried to pull the car door open, then ran behind the car as Worthy was driving off.  Worthy went to the police station and reported the incident.  The next day, he contacted the police and gave them a residential address on Ardmore Street where he had tracked the location of his cell phone.  He also informed the police that he

-1-

had retrieved messages sent from his phone and searched on Facebook to find the number to which the messages were sent. When he did so, a picture of defendant appeared. He recognized defendant's face but did not know his name at the time. On January 19, Worthy returned to the police station to look at a photo array, and he identified defendant as the person who robbed him. He was not able to identify the second man when the police called him back for a second photo array.

Defendant testified at his trial that he had met Worthy in December 2015, through a mutual friend, Derrick Johnson. On the night of the purported robbery, defendant was at Johnson's house. He called Worthy at about 12:00 a.m. and asked him to come to Johnson's house and Worthy came over with Hennessy. Worthy did not drink because he is on dialysis. When defendant and Johnson finished the Hennessey, the three headed to the Citgo gas station to get cigarillos and more alcohol. They never went to the liquor store.

At the Citgo station, Worthy gave Johnson his debit card of his own free will. While Johnson was in the gas station, Worthy tried to touch defendant's private parts three times and grabbed defendant's coat when defendant tried to get out of the car. Defendant defended himself by punching Worthy in the neck and jaw, and then defendant exited the car. Worthy immediately pulled off in the car. Defendant then went into the Citgo and tried, unsuccessfully, to use Worthy's debit card. He never contacted Worthy to return the debit card but gave it back to Johnson. Defendant never pointed a gun at Worthy; defendant did not own a gun.

Under cross-examination, defendant identified himself and Johnson on the video from the Citgo station. He also admitted that his phone records showed eight calls to or from Worthy's phone on January 15 between 12:23 a.m. and 1:08 a.m., the time of the alleged robbery. He stated that he only saw Worthy one time after he first met him. He admitted that he had Worthy's cell phone and explained that he had asked to see it while they were in the car and took it with him when he left the car. Though the phone was not intended to be a gift, defendant never returned the phone to Worthy.

Defendant was charged with armed robbery, felony-firearm, and unlawful imprisonment, but the jury found him guilty of unarmed robbery and unlawful imprisonment. The minimum guideline range for defendant was 50 to 100 months. At the sentencing hearing, defense counsel stated that the PSIR had been reviewed and "we have no additions, deletions, or corrections." After defendant exercised his right of allocution, the trial court noted that defendant had expressed no remorse and blamed the victim. The court opined that defendant "is a danger to society" and noted "that the defendant has been given plenty of opportunities to be rehabilitated." With regard to defendant's juvenile record, the trial court listed the following from the report: carrying a concealed weapon, larceny from a person, truancy, assault and battery, as well as gambling. The court noted that defendant was still committing the same types of crimes despite "all of these placements as a juvenile and he's only 21." And defendant was convicted as an adult of larceny from a person for which he received the benefit of the Holmes Youthful Training Act, giving him a chance to straighten out without a record. The court stated: "This many contacts and you see your past reflects [or] gives us a great indication of what your future is going to be." The court concluded that defendant was dangerous and sentenced him to concurrent terms of 100 to 180 months' imprisonment for the two convictions. This appeal followed.

First, defendant argues that there was insufficient evidence to support his unlawful imprisonment conviction. We disagree.

We review de novo a defendant's claim that the evidence was insufficient to support his conviction. *People v Kosik*, 303 Mich App 146, 150; 841 NW2d 906 (2013). "In reviewing the sufficiency of the evidence, this Court must view the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt." *Id*. Any conflicts in the evidence are to be resolved in favor of the prosecution. *Id*. at 151.

The false imprisonment statute, MCL 750.349b, provides in relevant part:

> (1) A person commits the crime of unlawful imprisonment if he or she knowingly restrains another person under any of the following circumstances:
>
> (a) The person is restrained by means of a weapon or dangerous instrument.
>
> (b) The restrained person was secretly confined.
>
> (c) The person was restrained to facilitate the commission of another felony or to facilitate flight after commission of another felony.

This Court has held that the three methods of committing false imprisonment are alternative theories. *People v Chelmicki*, 305 Mich App 58, 68; 850 NW2d 612 (2014). This means that a conviction is proper "even if some jurors believed [the defendant] restrained the victim by means of a weapon, and the rest of the jurors believed he restrained the victim in order to facilitate the commission of the felony[.]" *Id.* at 68-69.

Defendant argues that the evidence was not sufficient to support his conviction for false imprisonment because the jury acquitted him of armed robbery and felony-firearm, i.e., the jury did not believe that he had a gun; thus, he did not "restrain" Worthy. We disagree. There was sufficient evidence for the jury to conclude, at minimum, that defendant knowingly restrained Worthy to facilitate the commission of unarmed robbery, a felony. MCL 750.349b(1)(c); MCL 750.530(1).

MCL 750.349b defines the term "restrain" as follows:
> (3) As used in this section:
>
> (a) "Restrain" means to forcibly restrict a person's movements or to forcibly confine the person so as to interfere with that person's liberty without that person's consent or without lawful authority. The restraint does not have to exist for any particular length of time and may be related or incidental to the commission of other criminal acts.

In this case, Worthy testified that as he was getting back into his car after pumping gas at about midnight, two unknown men entered his vehicle on the passenger side—defendant in the front seat and the other man in the back seat. Defendant announced to Worthy that he was being

robbed and demanded his wallet, debit card, and unlocked cell phone. Worthy testified that he followed defendant's orders out of fear for his life. Defendant then ordered Worthy to drive to another location where his debit card could be used and told Worthy that they would kill him if they could not get money using his card.

As the prosecution argues, defendant could have robbed Worthy of his personal possessions when he was outside of his vehicle pumping gas. But instead, defendant waited until Worthy was inside of his vehicle and then he and his accomplice entered the vehicle so that Worthy was confined within the vehicle and unable to flee on foot. And because defendant was inside of his vehicle, Worthy was also unable to use the car for his escape. Thus, defendant used Worthy's own car as a means to forcibly confine Worthy so that defendant could rob him of his personal possessions and thereby accomplish the felony. Accordingly, there was sufficient evidence to support defendant's conviction of unlawful imprisonment and his challenge is without merit.

Next, defendant argues that he is entitled to resentencing because the trial court took into consideration dismissed juvenile charges in rendering sentence. After de novo review of this issue of law, we disagree. See *People v Lee*, 489 Mich 289, 295; 803 NW2d 165 (2011).

It has long been the rule in Michigan that a presentence investigation report (PSIR) may contain the defendant's juvenile history, including any dispositions made, and that this information is properly considered in sentencing an adult defendant. *People v McFarlin*, 389 Mich 557, 574-575; 208 NW2d 504 (1973); *People v Cross*, 186 Mich App 216, 217-218; 463 NW2d 229 (1990). As the *McFarlin* Court explained:

> A judge needs complete information to set a proper individualized sentence. A defendant's juvenile court history may reveal a pattern of lawbreaking and his response to previous rehabilitative efforts. [*Id*. at 574-575.]

Stated another way, "[t]he trial judge is required to inquire into a defendant's antecedents and character prior to sentencing." *People v Martin*, 393 Mich 145, 147; 224 NW2d 36 (1974). This includes unsigned complaints as well as charges that did not result in convictions, as long as there is no claim that the information is inaccurate. *Id*.; *People v Gray*, 125 Mich App 482, 486-487; 336 NW2d 491 (1983). Our Supreme Court has held that even expunged juvenile information is properly considered when the individual re-offends as an adult, because "complete information is necessary to set an individualized sentence and [] rehabilitative goals would not be served by preventing a sentencing judge from considering information about a defendant's juvenile criminal history." *People v Smith*, 437 Mich 293, 301-302; 470 NW2d 70 (1991).

If, however, a defendant does claim that there is inaccurate information in the PSIR, a trial court must respond by: (1) holding an evidentiary hearing on the report's accuracy; (2) accepting an unsworn statement from the defendant; or (3) ignoring the challenged information in sentencing the defendant and clearly indicate that the challenged information was not considered. *Gray*, 125 Mich App at 487. But in this case, defendant did not challenge the

accuracy of the PSIR at sentencing. Instead, defense counsel stated that the PSIR had been reviewed and "we have no additions, deletions, or corrections." Therefore, the trial court properly considered defendant's juvenile history in rendering sentence.[1] And to the extent that defendant is claiming his counsel was ineffective for failing to object to the inclusion of defendant's juvenile history in the PSIR, that argument fails. An attorney is not required to raise futile objections. See *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004).

Next, defendant argues that he is entitled to resentencing because offense variables (OV) 1, 2, 4, and 12 were incorrectly scored which affected the recommended minimum sentencing guidelines range. We disagree as to OV 1, 2, and 12, but agree as to OV 4.

The trial court's factual determinations regarding sentencing are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Calloway*, 500 Mich 180, 184; 895 NW2d 165 (2017), citing *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People Johnson*, 466 Mich 491, 497-498; 647 NW2d 480 (2002). " 'Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo.' " *Calloway*, 500 Mich at 184, quoting *Hardy*, 494 Mich at 438. "[W]hen determining how offense variables should be scored, this Court reads the sentencing guideline statutes as a whole." *People v Bonilla-Machado*, 489 Mich 412, 422; 803 NW2d 217 (2011).

Michigan's sentencing guidelines are advisory in all cases. *People v Steanhouse*, 500 Mich 453, 470; 902 NW2d 327 (2017). However, " '[s]entencing courts must . . . continue to consult the applicable guidelines range and take it into account when imposing a sentence . . . [and] justify the sentence imposed in order to facilitate appellate review.' " *Id.*, quoting *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "The sentencing offense determines which offense variables are to be scored in the first place, and then the appropriate offense variables are generally to be scored on the basis of the sentencing offense." *People v Sargent*, 481 Mich 346, 348; 750 NW2d 161 (2008). "The primary focus of the offense variables is the nature of the offense[.]" *Id.*

"A sentencing court may consider all record evidence before it when calculating the guidelines, including, but not limited to, the contents of a presentence investigation report, admissions made by a defendant during a plea proceeding, or testimony taken at a preliminary examination or trial." *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012) (citation omitted). Reasonable inferences that arise from the record evidence may also be utilized to support the scoring of a variable. *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012).

---

[1] We note and reject defendant's reliance on case law that involves the proper scoring of offense variables because the trial court did not use defendant's unproven juvenile charges to score an offense variable.

Defendant argues that OV 1 (aggravated use of weapon) should have been scored at 5 points—not 15 points, and that OV 2 (lethal potential of the weapon used) should have been scored at zero points—not 5 points. We disagree.

Offense variable 1 is to be assessed at 15 points if a "firearm was pointed at or toward a victim," and at 5 points if a "weapon was displayed or implied." MCL 777.31(1)(c) and (e). Offense variable 2 is to be assessed 5 points if a firearm was possessed or used. MCL 777.32(1)(d). Defendant argues that because the jury did not convict him of armed robbery, the evidence was insufficient to establish that he possessed and pointed a firearm at or toward Worthy. Although a jury was not convinced beyond a reasonable doubt that defendant had a gun, the trial court was only required to determine if a preponderance of the evidence supported the facts needed to score the variables. *Calloway*, 500 Mich at 184, citing *Hardy*, 494 Mich at 438. And here, Worthy testified that defendant pulled a gun with a black handle partway out of his pocket and kept it low and pointed at him as he drove where defendant and his accomplice directed him to drive. The trial court did not clearly err when it assessed 15 points for OV 1 and 5 points for OV 2.

Next, defendant argues that OV 4 (psychological injury) was improperly scored at 10 points and it should have been scored at zero points. We agree.

Offense variable 4 is to be assessed at 10 points if "[s]erious psychological injury requiring professional treatment occurred to a victim" and zero points if there was no such injury. MCL 777.34(1)(a) and (b). Further, 10 points is to be assessed "if the serious psychological injury may require professional treatment . . . [and] the fact that treatment has not been sought is not conclusive." MCL 777.34(2). There must be some record evidence of psychological injury to assess the points. *People v White*, ___ Mich ___; ___ NW2d ___ (December 26, 2017) (Docket No. 149490); *People v Lockett*, 295 Mich App 165, 183; 814 NW2d 295 (2012). The victim's expression of fearfulness while a crime is being committed, by itself, is insufficient to assess points for OV 4. *White*, ___ Mich ___; slip op at 1-2. "The trial court may assess 10 points for OV 4 if the victim suffers, among other possible psychological effects, personality changes, anger, fright, or feelings of being hurt, unsafe, violated." *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014).

Worthy testified that he was afraid *during* this robbery but, as in the *White* case, here, there was no victim impact statement, preliminary examination testimony, or victim statement at sentencing that supports a scoring of 10 points for OV 4. Detroit Police Officer Robert Rowe, who took Worthy's statement immediately after the robbery, testified that Worthy "appeared shaken" and it looked like "something traumatic happened" to him. But a preponderance of the evidence must establish that Worthy suffered a "serious psychological injury" and this evidence is insufficient. Because the subtraction of 10 points lowers defendant's guidelines range from a minimum of 50 to 100 months in prison to a minimum of 43 to 86 months in prison, MCL 777.64, we vacate defendant's judgment of sentence and remand for resentencing. See *People Francisco*, 474 Mich 82, 92; 711 NW2d 44 (2006).

Defendant also argues that OV 12 (contemporaneous felonious criminal acts) was improperly scored at one point and it should have been scored at zero points. We disagree.

Offense variable 12 is to be assessed one point when one "contemporaneous felonious criminal act involving any other crime was committed." MCL 777.42(1)(f). The felonious criminal act must not have resulted in a separate conviction. MCL 777.42(2)(a)(*ii*). And in this case, there was evidence that defendant was unlawfully carrying a concealed weapon which is a felony. MCL 750.227(2). Therefore, the trial court did not clearly err when it assessed one point for OV 12.

In summary, defendant's challenges to the scoring of the OV 1, 2, and 12 are without merit. It follows that defendant's ineffective assistance of counsel claim premised on the failure to object to the scoring of these offense variables fails because an attorney is not required to raise futile objections. See *Thomas*, 260 Mich App at 457. However, defendant's challenge to the scoring of OV 4 is meritorious and requires remand for resentencing. In light of this relief afforded defendant, we will not address his ineffective assistance of counsel claim with respect to OV 4. See *People v Phelps*, 288 Mich App 123, 142; 791 NW2d 732 (2010), overruled on other grounds by *People v Hardy*, 494 Mich 430, 438 n 18; 835 NW2d 340 (2013).

We affirm defendant's convictions, but vacate defendant's judgment of sentence and remand for resentencing. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly