James LANNI, Plaintiff,

v.

John ENGLER, et al., Defendants.

No. 97–CV–71738–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 13, 1998.

James Lanni, Flint, MI, pro se.

Margaret A. Nelson, Michigan Dept. of Atty. Gen., Lansing, MI, for Defendants.

## *MEMORANDUM OPINION AND ORDER*

ZATKOFF, District Judge.

### I. INTRODUCTION

This matter is before the Court on defendant's Motion to Dismiss under Fed.R.Civ. Pro. 12(b)(6). Plaintiff filed a response to which defendant replied. The facts and legal arguments are adequately presented in the briefs, and the decisional process will not be aided by oral arguments. Therefore, pursuant to E.D. Mich. Local R. 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons that follow, defendant's motion is GRANTED.

### II. BACKGROUND

On July 29, 1994, seven-year-old Megan Kanka was abducted, raped, and murdered near her home in New Jersey. The man who confessed to her murder lived across the street from the Kanka family and had twice been convicted of sex offenses involving young girls. Neither Megan, her parents, local police, or members of the community were aware of the confessed murderer's criminal history. Nor were they aware that he shared his house with two other men previously convicted of sex crimes. Public outcry, led by Megan Kanka's parents, prompted legislatures around the country to quickly enact sex offender registration laws in an effort to protect the public.

In 1994, the Michigan Legislature enacted their version of "Megan's Law" which required only that convicted sex offenders register with the local law enforcement agency. MICH.COMP.LAWS ANN. § 28.722(d). The 1994 Michigan Sex Offender Registration Act (hereinafter "Act") precluded public dissemination of the registration material and provided criminal sanctions against any person disclosing the information as well as a civil cause of action by the registrant against the individual responsible for disclosure. MICH. COMP.LAWS ANN. § 28.721 *et. seq.*

The Act requires all individuals convicted of a listed offense on or after October 1, 1995 who are domiciled or temporarily residing in the state to register. The Act also requires all individuals domiciled or temporarily residing in the state who were convicted of a listed offense before October 1, 1995 and who are placed on probation or parole, committed to jail, committed to the jurisdiction of the department of corrections, or under the jurisdiction of the juvenile division of the probate court or the department of social services for that offense to register. MICH. COMP.LAWS ANN. § 28.723(a), (b).

The Department of State Police is required to maintain a computerized data base of those who register under the Act. MICH. COMP.LAWS ANN. § 28.728. The information to be contained in the registry includes the offender's name, social security number, address, a brief summary of information regarding each conviction, a complete physical description, blood type, and DNA information. The statute limits access to the above information only to law enforcement agencies. MICH.COMP.LAWS ANN. § 28.730.

In 1994, Congress enacted the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, which conditioned the availability of federal crime prevention funds upon a state's creation of a sex offender registration and community notification program. On May 17, 1996, President Clinton signed the federal version of Megan's Law, which added a mandatory notification provision to the existing registration requirements. 42 U.S.C. § 14071(d).

In response to the federal mandate, the Michigan Legislature amended the Act to include a public notification provision. MICH. COMP.LAWS ANN. § 28.730(2) and (3). The amendment went into effect on April 1, 1997 and created a second registry consisting of the following information: name, aliases, address, physical description, birth date, and offense of conviction. The registry is organized by zip code, so that only those registered offenders living within a given zip code will appear on any given registry. MICH. COMP.LAWS ANN. § 28.728(1). Therefore, only those persons living within the same zip code as the sex offender may access the registry.

Plaintiff was convicted of one of the listed sex offenses before October 1, 1995, and was paroled on August 22, 1997. Plaintiff argues that the Act's registration and community notification requirements: (1) violate the Equal Protection Clause; (2) deprive him of life and liberty without due process; (3) violates the Double Jeopardy Clause; (4) deprive him of his Eighth Amendment right against cruel and unusual punishment; (5) violate the Ex Post Facto Clause; (6) deprive him of his constitutional right to privacy; and (7) violate the Bill of Attainder Clause. Defendant filed a Motion to Dismiss, arguing that plaintiff's claims are without merit. For the reasons stated below, defendant's motion is GRANTED.

## III. STANDARD OF REVIEW

■ A complaint will be dismissed under Fed.R.Civ.P. 12(b)(6) if it fails to state a claim upon which relief may be granted. In evaluating the motion, "[t]he court must construe the complaint in a light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Allard v. Weitzmen (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir.1993); *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir.1993). In order to defeat a motion to dismiss, the opposing party must allege sufficient facts in the complaint, as to each material element, so that a decision in his favor is conceivable under the legal theory he advances. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988).

## IV. OPINION

### A. DOUBLE JEOPARDY

Plaintiff's first claim is that application of the Act against him violates the Double Jeopardy Clause by twice punishing him for the same crime. In *Hudson v. United States*, —— U.S. ——, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997), the Supreme Court changed the double jeopardy analysis and explicitly overruled *United States v. Halper*, 490 U.S. 435, 448, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) and it's line of cases.[1]

■ The Double Jeopardy Clause provides that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb." As the Supreme Court held in *Hudson*, the "Clause protects only against the imposition of multiple criminal punishments for the same offense." *Hudson*, —— U.S. at ——, 118 S.Ct. at 493 (citations omitted). Whether a particular punishment is civil or criminal depends initially on whether the legislature, "in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other." *Id.*, quoting *United States v. Ward*, 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980). Even in those cases where the legislature "has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect to transform what was clearly intended as a civil remedy into a criminal penalty." *Id.* (citations omitted).

In determining whether the civil remedy is overwhelmingly punitive in purpose or effect, the *Hudson* Court found that the factors listed in *Kennedy v. Mendoza–Martinez*, 372

---

1. In *Halper*, the Supreme Court held that imposition of "punishment" of any kind violates the Double Jeopardy Clause. Whether a sanction constituted punishment depended, not on whether it was criminal in nature, but primarily on whether it served the traditional goals of punishment, namely "retribution and deterrence." *Halper*, 490 U.S. at 448, 109 S.Ct. at 1902.

U.S. 144, 168–69, 83 S.Ct. 554, 567–68, 9 L.Ed.2d 644 (1963), are helpful, including: (1) "whether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as punishment"; (3) "whether it comes into play only on a finding of scienter"; (4) "whether its operation will promote the traditional aims of punishment-retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may be rationally be connected is assignable for it"; and (7) "whether it appears excessive in relation to the alternative purpose assigned." Further, the *Kennedy–Martinez* factors "must be considered in relation to the statute on its face, and only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Hudson*, —— U.S. at ——, 118 S.Ct. at 493 *quoting Ward*, 448 U.S. at 249, 100 S.Ct. at 2641–42.

■ Applying the *Hudson* analysis to this case, it is clear that application of either the Act's notification or registration provisions to plaintiff would not violate the Double Jeopardy Clause. Unlike other cases dealing with similar sex offender registration and notification statutes, the Michigan Act contains no express statements of legislative intent. *See e.g. Doe v. Weld*, 954 F.Supp. 425, 429 (D.C.Mass.1996); *Doe v. Pataki*, 120 F.3d 1263, 1276 (2d Cir.1997). However, most circuits that have addressed the issue have found the purpose of the notification and registration provisions to be regulatory. *See e.g. Doe v. Pataki*, 120 F.3d at 1285; *E.B. v. Verniero*, 119 F.3d 1077, 1096–97 (3d Cir. 1997); *Artway v. Attorney General*, 81 F.3d 1235, 1264 (3d Cir.1996); *Russell v. Gregoire*, 124 F.3d 1079, 1090 (9th Cir.1997).

Although the Act does not contain an express statement of legislative intent, the implied purpose is plainly regulatory. *See Hudson*, —— U.S. at ——, 118 S.Ct. at 493. Neither notification or registration inflicts suffering, disability, or restraint on the registered sex offender. It does nothing more than create a method for easier public access to compiled information that is otherwise available to the public through tedious research in criminal court files. Like similar laws in other states, the Michigan Act also seeks to provide the local citizenry with information concerning persons residing near them who have been convicted of sexually predatory conduct and who, by virtue of relatively high recidivism rates among such offenders and the devastating impact that sex crimes have on society, pose a serious threat to society. *See Doe v. Pataki*, 120 F.3d at 1266 (citing numerous studies which indicate the seriousness of the harm that sex offenders pose and the perception, supported by some data, that sex offenders have a higher relative recidivism rate than other offenders).

The language of section 730 makes clear that the legislature intended the notification provision to prevent future attacks by recidivist sex offenders. The text and structure reveal no intent to punish, but rather only a regulatory purpose. Notification is limited both by the amount of information available and the area in which the information is disseminated. First, the data available for public dissemination is limited to information already available from law enforcement, court, and Department of Corrections records. MICH.COMP.LAWS ANN. 15.231 et. seq. Second, access to the sex offender registry is limited by zip code so that only those living in the same zip code as the sex offender can obtain the information. A law designed to punish a sex offender would not contain these strict limitations on public dissemination.

■ Turning to the second phase of the *Hudson* test, this Court finds that there is little or no evidence suggesting that sex offender registration and notification is "so punitive in form and effect as to render them criminal despite Congress' intent to the contrary." *Hudson*, —— U.S. at ——, 118 S.Ct. at 495 *quoting United States v. Ursery*, 518 U.S. 267, 289, 116 S.Ct. 2135, 2148, 135 L.Ed.2d 549 (1996).

First, sex offender registration and notification have no strict historical precedent. Plaintiff argues that the notification provisions can be analogized to the law in Nazi Germany which required Jews to wear the Star of David for identification purposes. However, this Court cannot accept plaintiff's suggested analogy. The purpose of registra-

tion and notification is to warn the local citizenry of the possibility that a person living in the community presents a serious threat to society. The sting of notification comes not from their being publicly displayed for shaming and ridicule, but rather from the dissemination of accurate public record information about their past criminal activities. Dissemination of information about a person's criminal involvement has always held the potential for negative repercussions for those involved. However, public notification in and of itself, has never been regarded as punishment when done in furtherance of a legitimate government interest. *Doe v. Kelley,* 961 F.Supp. 1105, 1110 (W.D.Mich.1997). The registration and notification requirements can be more closely analogized to quarantine notices when public health is endangered by individuals with infectious diseases. *Kansas v. Hendricks,* —— U.S. ——, ——, 117 S.Ct. 2072, 2084, 138 L.Ed.2d 501 (1997). Whenever notification is directed to a risk posed by individuals in the community, those individuals can expect to experience some embarrassment and isolation. Nonetheless, it is generally recognized that the state is well within its rights to issue such warnings and the negative effects are not regarded as punishment. Therefore, the relevant historical precedent does not demonstrate an objective punitive purpose.

Second, as discussed above, the Act does not involve an "affirmative disability or restraint," as that term is normally understood. While plaintiff may experience a certain amount of embarrassment from public dissemination, this is "certainly nothing approaching the 'infamous punishment' of imprisonment." *Hudson,* —— U.S. at ——, 118 S.Ct. at 496 *quoting Flemming v. Nestor,* 363 U.S. 603, 617, 80 S.Ct. 1367, 1376, 4 L.Ed.2d 1435 (1960).

Third, neither registration nor community notification comes into play "only" on a finding of scienter. The Act simply requires that certain individuals convicted of an enumerated sex offense must register with the local law enforcement agency. MICH.COMP.LAWS ANN. § 28.723. Moreover, those required to register are also subject to public notification

under section 730. Neither provision requires a finding of scienter.

■ Fourth, the conduct for which the Act's sanctions are imposed may also be criminal (and in this case formed the basis for plaintiff's incarceration). However, "[t]his fact is insufficient to render the [penalties] criminally punitive," *Hudson,* —— U.S. at ——, 118 S.Ct. at 496, particularly in the double jeopardy context, *see United States v. Dixon,* 509 U.S. 688, 704, 113 S.Ct. 2849, 2860, 125 L.Ed.2d 556 (1993) (rejecting "same-conduct" test for double jeopardy purposes).

Finally, this Court recognizes that imposition of the registration and notification requirements may deter others from future criminal activity, a traditionally recognized punitive purpose. However, a secondary criminal purpose may not undermine the Act's primary remedial purpose, as deterrence "may serve civil as well as criminal goals." *Hudson,* —— U.S. at ——, 118 S.Ct. at 496 quoting *Ursery,* 518 U.S. at 291, 116 S.Ct. at 2149. Therefore, the notification provision does not violate the Double Jeopardy Clause. Accordingly, the less onerous registration provision also passes constitutional scrutiny.

## B. EX POST FACTO CLAUSE, BILL OF ATTAINDER, CRUEL AND UNUSUAL PUNISHMENT.

■ Before *Hudson,* the analysis for the Double Jeopardy Clause was the same as the analysis under the Ex Post Facto Clause, the Bill of Attainder Clause and the Eighth Amendment protection against cruel and unusual Punishment. *See Kansas v. Hendricks,* —— U.S. at ——, 117 S.Ct. at 2081; *Doe v. Kelley,* 961 F.Supp. at 1108. *Hudson* involved the issue of whether a subsequent criminal prosecution violates the Double Jeopardy Clause where the defendants were previously disbarred and fined for the same conduct. The Supreme Court did not have cause to address whether the *Hudson* approach applied to the other constitutional provisions. However, even assuming that the *Halper* approach still applies to the other constitutional provisions, this Court nonetheless concludes that the Act does not impose

punishment. First, as discussed above, the purpose of the act was to protect the public, and not to punish sex offenders. Second, the historical precedent does not demonstrate an objective punitive purpose. Finally, neither the direct or indirect effects of the Act are sufficiently onerous for this Court to conclude that any punitive effects clearly outweigh the remedial purpose. *United States v. Ward,* 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980). Therefore, under either the *Hudson* or the *Halper* analysis, plaintiff has failed to demonstrate that the Act violates the Ex Post Facto Clause, the Bill of Attainder Clause, or the Eighth Amendment.

## C. EQUAL PROTECTION

The Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV. The Equal Protection Clause does not forbid classifications, but simply prevents governmental decision makers from treating differently persons who are in all relevant respects alike. *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920). Generally, "legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality." *McGowan v. Maryland,* 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). Therefore, the Supreme Court has clearly held that, unless a classification warrants some form of heightened review because it jeopardizes a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest. *See e.g., Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439–41, 105 S.Ct. 3249, 3254–55, 87 L.Ed.2d 313 (1985).

Plaintiff has failed to demonstrate that he is a member of any suspect class or that the Act jeopardizes a fundamental right. Therefore, the rational basis test applies in this case. Under the rational basis test, the legislature need only have a rational reason for distinguishing sex offenders from those convicted of other crimes. *Id.* Given the magnitude of the harm that the Act was intended to prevent, plaintiff presents no evidence that the Act is not reasonably related to the government's legitimate interest of protecting the public.

## D. DUE PROCESS

The Fourteenth Amendment of the Constitution also provides that "no person shall be deprived of life, liberty, or property without due process of law." U.S. CONST. AMEND. XIV.

### 1. PROCEDURAL DUE PROCESS

In order to trigger the protections of the Due Process Clause, plaintiff must show that the Act deprives him of a protected liberty or property interest. U.S. CONST. AMEND. XIV. However, the plaintiff has failed to make the required showing. The Act merely compiles truthful, public information and makes it more readily available. To the extent that plaintiff may suffer injury to his reputation or loss of employment opportunities, such injuries are purely speculative on the present record. Moreover, this Court finds that any detrimental effects that may flow from the Act would flow most directly from plaintiff's own misconduct and private citizen's reaction thereto, and only tangentially from state action. Therefore, plaintiff has not shown the Act entitles him to due process protection.

Even if the plaintiff could prove deprivation of a liberty or property interest, plaintiff's due process claim still must fail. Plaintiff has not indicated what individualized determination need be made in this case. Instead, plaintiff's due process challenge is little more than an attack on the legislature's decision to subject sex offenders to registration and community notification. Under the Act, all sex offenders are required to register and are subject to limited public disclosure. Accordingly, the local law enforcement agency has no discretion to determine which sex offenders will be exposed to public dissemination. Therefore, a hearing would serve no purpose. *See Doe v. Weld,* 954 F.Supp. 425, 437 (D.Mass.1996).

### 2. SUBSTANTIVE DUE PROCESS

Plaintiff claims that the Act deprives him of his constitutional right to privacy. Plaintiff essentially argues that public dissemination of his personal data will damage his reputation and prevent him from obtaining employment. However, reputational interests have not been accorded the same level of protection in our society as have interests which have been deemed by the Supreme Court to be "implicit in the concept of ordered liberty." *See E.B. v. Verniero,* 119 F.3d 1077 (3d Cir.1997) *quoting Paul v. Davis,* 424 U.S. 693, 713, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). In this case, the information made public by the Act is already a matter of public record, to which no privacy rights attach. Therefore, plaintiff has failed to demonstrate the existence of a legitimate privacy interest in preventing compilation and dissemination of truthful information that is already, albeit less conveniently, available as a matter of public record.

### V. CONCLUSION

For the reasons stated above, defendant's Motion to Dismiss is GRANTED and plaintiff's complaint is DISMISSED.

IT IS SO ORDERED.

### *JUDGMENT*

IT IS ORDERED AND ADJUDGED that pursuant to this Court's Order dated February 13, 1998, plaintiff's action is hereby dismissed.