*In re* TD

Docket No. 294716. Submitted January 12, 2011, at Lansing. Decided
May 26, 2011, at 9:00 a.m. Leave to appeal sought.
A Washtenaw Circuit Court jury adjudicated TD, as a juvenile,
responsible for committing second-degree criminal sexual conduct.
TD successfully completed probation and shortly after reaching
age 18, he petitioned the court under MCL 28.728c for relief from
the registration requirements of the Sex Offenders Registration
Act (SORA), MCL 28.721 *et seq.* The court, Darlene A. O'Brien J.,
determined that the statute was unconstitutional as applied to TD
and issued an order granting him relief from SORA's registration
requirements. The prosecutor appealed on behalf of the people of
the state of Michigan.

The Court of Appeals *held*:

1. The determination whether governmental action consti-
tutes punishment, for purposes of the constitutional prohibition
against cruel or unusual punishment, requires consideration of the
totality of the circumstances and particularly the legislative in-
tent, the design of the legislation, the historical treatment of
analogous measures, and the effects of the legislation. Under this
analysis, the requirement that TD register as a sex offender under
SORA did not constitute punishment given that (1) the Legisla-
ture's express intent in enacting SORA was to assist in the
prevention of and protection against future criminal sexual acts by
convicted sex offenders, (2) registration is regulatory and remedial
and does not result in the release of previously sealed information,
(3) registration is not equivalent to historical practices such as
branding, shaming, or banishment, and (4) the negative conse-
quences of registration result from actions taken by the public and
are not imposed by the registration requirement itself. The con-
trary holding reached in *People v Dipiazza*, 286 Mich App 137
(2009), was confined to the specific facts of that case. The trial
court erred by holding that the act invalidly imposed a cruel or
unusual punishment on TD.

2. Some overlap between the functions and powers of the
separate branches of government is permissible. Accordingly, the
Legislature did not violate the separation-of-powers doctrine by

prohibiting courts from granting relief to certain offenders from SORA's registration requirements. Courts may still pass on constitutional questions raised as a result of SORA registration.

3. SORA's registration requirements are rationally related to the legitimate governmental interest of enabling members of the public to protect themselves against the commission of criminal sexual acts by convicted sex offenders even if the risk of recidivism is low in the cases of some offenders required to register.

Reversed.

RONAYNE KRAUSE, J., concurring, agreed with the majority that registration under SORA is not a punishment under Michigan law, but expressed concern with the public nature of registration for those like TD, who are charged and found responsible as juveniles. She believed that the majority did not give enough weight to the burden that public registration places on registrants, stated that requiring the registration of people who are demonstrably not dangerous makes it more difficult to regard SORA as the nonpunishment tool that it should be, and urged the Legislature to grant courts discretion in such situations.

1. RAPE — CRIMINAL SEXUAL CONDUCT — JUVENILES — SEX OFFENDERS REGISTRATION ACT — CONSTITUTIONAL LAW — CRUEL OR UNUSUAL PUNISHMENT.

Requiring an individual charged and adjudicated responsible as a juvenile to register as a sex offender under the Sex Offenders Registration Act does not constitute punishment and, therefore, is not unconstitutional as cruel or unusual punishment (Const 1963, art 1, § 16; MCL 28.722[a][*iii*], MCL 28.723).

2. CONSTITUTIONAL LAW — SEPARATION OF POWERS — SEX OFFENDERS REGISTRATION ACT — PROHIBITION AGAINST GRANTING RELIEF FROM REGISTRATION REQUIREMENTS FOR CERTAIN OFFENDERS.

The prohibition of the Sex Offenders Registration Act against granting relief from the registration requirements for certain offenders is within the Legislature's power and does not violate the constitutional separation of powers (MCL 28.728c).

*Debra S. Keehn* and *Faupel, Fraser & Fessler* (by *Marian L. Faupel*) for TD.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Brian L. Mackie*, Prosecuting Attorney, and *David A. King*, Assistant Prosecuting Attorney, for the people of the state of Michigan.

Amici Curiae:

*Kimberly Thomas* for the University of Michigan Juvenile Justice Clinic.

*Jessie J. Rossman, Michael J. Steinberg,* and *Kary Moss* for the American Civil Liberties Union Fund of Michigan.

Before: METER, P.J., and M. J. KELLY and RONAYNE KRAUSE, JJ.

METER, P.J. Respondent appeals as of right an order granting petitioner, TD, relief from the registration requirements of the Sex Offenders Registration Act (SORA), MCL 28.721 *et seq.* The trial court found that, as applied to TD, registration under the SORA is cruel or unusual punishment under Michigan's Constitution. We reverse.

In 2007, a jury found that TD had committed second-degree criminal sexual conduct (CSC II) as defined in MCL 750.520c(1)(d)(*ii*) (sexual contact aided or abetted by one or more persons and involving force or coercion). The incident underlying TD's juvenile adjudication occurred in 2006 when he was 15 years old. TD and another male classmate approached a female classmate at school. The case report indicates that TD punched the victim in the back and grabbed at her breast. He then held the victim in a chokehold and pulled her shirt up to expose her breast. TD's accomplice pulled on the victim's belt. In an incident report, the victim relayed that she felt threatened and scared during the attack, and she stated that TD let her go after she bit him on the arm.

After a dispositional hearing, TD was detained in a youth home and placed on probation. TD participated in

a community-based treatment program, as well as group and individual therapy. TD successfully completed his treatment and was released from probation.

Subject to certain exemptions, the SORA provides that juveniles who have been adjudicated as responsible for a "listed offense," see MCL 28.722(e),[1] must register on the public sex-offender registry, MCL 28.722(a)(*iii*); MCL 28.723. CSC II is a listed offense. MCL 28.722(e)(*ix*). CSC II committed under 750.520c(1)(d)(*ii*) is not subject to any exemptions pertaining to juvenile offenses, and thus TD had to fully register under the act after reaching age 18.[2] See MCL 28.728(3)(a).

Shortly after reaching age 18, TD petitioned the trial court for certain relief from the SORA's registration requirements under MCL 28.728c. MCL 28.728c(3) states, "This section is the sole means by which an individual may obtain judicial review of his or her registration requirements under this act." However, TD fell within the statute's mandatory prohibition against granting relief from the registration requirements. MCL 28.728c(14) states that "[t]he court shall not grant a petition filed under this section if any of the following apply . . . ." The statute then lists specific instances in which the offender is not eligible for relief from the SORA's registration requirements. Juveniles adjudicated responsible for CSC II committed under 750.520c(1)(d)(*ii*) are not eligible for relief. MCL 28.728c(14)(c)(*ii*).

---

[1] The Legislature amended SORA effective July 1, 2011. 2011 PA 17. Accordingly, some of the statutory citations used in this opinion will change after that date.

[2] As stated in *In re Wentworth*, 251 Mich App 560, 564; 651 NW2d 773 (2002): "In 1999, in response to a federal mandate, the Legislature amended the SORA, adding public notification provisions. . . . A juvenile offender is initially exempt from inclusion within the public database; however, for CSC II violations, that exemption ends when the individual becomes eighteen years old."

The trial court recognized that, under the statute, it did not have discretion to grant TD's request. However, TD also challenged the constitutionality of the SORA's registration requirements, and the trial court agreed that the statute was unconstitutional as applied to TD. TD argued, and the trial court agreed, that the statute results in cruel or unusual punishment under the Michigan Constitution, see Const 1963, art 1, § 16, as applied to him.

We review de novo constitutional issues. *In re Ayres*, 239 Mich App 8, 10; 608 NW2d 132 (1999). The party challenging a statute as unconstitutional bears the burden of proof, and statutes are presumed constitutional. *Id.* "[T]he courts have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent." *Id.*

In arguing that the SORA results in cruel or unusual punishment as applied to him, TD specifically relies on expert testimony provided at the evidentiary hearing on his petition for relief. TD's expert testified that juvenile offenders can be successfully rehabilitated and pose a low risk of recidivism. TD argues that it is cruel or unusual to subject a rehabilitated, nondangerous juvenile offender such as himself to the stigma of public registration as a sex offender.

Before this Court is obligated to evaluate whether a punishment is cruel or unusual, it must first determine whether the challenged governmental action is actually a form of punishment. *Id.* at 14. This Court has previously considered whether the SORA imposes punishment. In *People v Pennington*, 240 Mich App 188, 191-192; 610 NW2d 608 (2000), this Court considered a challenge to the SORA in which the defendant argued that it violated the constitutional prohibition against ex post facto laws. This Court held that the SORA's

registration requirements are not punishment and, therefore, do not violate the prohibition of ex post facto laws. *Id.* at 193. *Pennington* adopted the reasoning of *Lanni v Engler*, 994 F Supp 849 (ED Mich, 1998), and *Doe v Kelley*, 961 F Supp 1105 (WD Mich, 1997), two federal cases holding that the SORA is directed at protecting the public and that it has no punitive purpose. *Pennington*, 240 Mich App at 193-197. *People v Golba*, 273 Mich App 603; 729 NW2d 916 (2007), also addressed whether the registration requirements of the SORA constituted punishment. In *Golba*, this Court held that requiring the defendant to register as a sex offender on the basis of judicially found facts did not implicate the defendant's right to a jury trial because the SORA does not impose a penalty or punishment. *Id.* at 620-621. *Golba* noted that the SORA promotes awareness of potentially dangerous individuals to members of a community and that this protection of the community is a legitimate governmental interest. *Id.* at 620.

This Court has also considered whether the SORA's registration requirements constitute punishment as applied to juveniles. In *Ayres*, 239 Mich App at 21, this Court concluded that the SORA does not impose punishment. In that case, the 14-year-old respondent was found responsible for CSC II and was ordered to register as a sex offender pursuant to the SORA. *Id.* at 9-10. The respondent challenged this requirement, claiming that it violated the constitutional prohibition against cruel or unusual punishment. *Id.* at 10. The *Ayres* Court adopted the reasoning of the courts in *Lanni* and *Kelley*, quoting language from both indicating that the registration requirements are regulatory and not punitive. *Id.* at 14-18. The *Ayres* Court noted that the SORA " 'does nothing more than create a mechanism for easier public access to compiled information that is otherwise available to the

public only through arduous research in criminal court files.' " *Id.* at 15, quoting *Kelley*, 961 F Supp at 1109.

At first blush, *Ayres* appears controlling in this case because *Ayres* specifically addressed a challenge by a juvenile to the SORA's registration requirements and rejected the defendant's challenge to the SORA as cruel or unusual under the Michigan Constitution. *Ayres*, 239 Mich App at 21. However, even though the *Ayres* respondent was required by the SORA to register as a sex offender, at the time of that opinion juvenile offenders were required to register on a database used only by law enforcement and not available to the public. *Id.* at 18-19. Since *Ayres*, the SORA has been amended to require some juvenile sex offenders to register on the public database upon reaching the age of majority. MCL 28.728. This change casts doubt on the holding of *Ayres*, because the *Ayres* Court partly based its conclusion that the SORA does not impose punishment on the fact that juveniles were not required to register publicly. *Ayres*, 239 Mich App at 18-19.

This Court questioned the holding in *Ayres* in *In re Wentworth*, 251 Mich App 560; 651 NW2d 773 (2002). The juvenile respondent in *Wentworth* was found responsible for CSC II. *Id.* at 561. On appeal, the respondent argued that the SORA's registration requirements violated her due process rights and her right to privacy. *Id.* at 563, 566. After rejecting the respondent's constitutional challenges to the SORA, this Court stated, in dicta, that "the recent amendment of the statute removing . . . confidentiality safeguards [for juveniles] raises questions about the continuing validity of our holding in *Ayres*" concerning the issue of cruel or unusual punishment. *Id.* at 569.

In *People v Dipiazza*, 286 Mich App 137, 146; 778 NW2d 264 (2009), the Court stated that the "essential

underpinning of the conclusion in *Ayres* that the registration requirement imposed by SORA does not punish was the fact that strict statutory guidelines protected the confidentiality of registration data concerning juvenile sex offenders." The *Dipiazza* Court noted that "[t]his premise is no longer valid . . . ." *Id.* The Court thus went on to determine anew whether, in light of the specific facts of *Dipiazza*, the SORA registration requirements were punishment as applied to a juvenile. *Id.* at 147-153.

In *Dipiazza*, the defendant was adjudicated under the Holmes Youthful Trainee Act (HYTA), MCL 762.11 *et seq.*, for attempted third-degree criminal sexual conduct. *Id.* at 140. When he was 18,[3] the defendant had a consensual sexual relationship with someone who was "nearly 15." *Id.* The defendant and the younger person were later married. *Id.* at 140 n 1. Under the HYTA, all proceedings regarding the criminal charge and disposition are closed to the public as long as the defendant fulfills certain requirements. *Id.* at 141-142. The defendant successfully completed his HYTA program and his case was dismissed, leaving him with no conviction on his record. *Id.* at 140. The SORA was amended, effective October 1, 2004, to exclude individuals such as the defendant in *Dipiazza* from the public-registration requirements. *Id.* at 143. The defendant's offense had occurred before that date, however, and he thus challenged the SORA registration requirements as applied to him, arguing that the requirements constituted cruel or unusual punishment. *Id.* at 140-141.

The Court analyzed whether the registration requirements constituted punishment under the facts of

---

[3] As noted in *Dipiazza*, 286 Mich App at 141, the "HYTA is essentially a juvenile diversion program for criminal defendants under the age of 21."

that case. *Id.* at 147. It used the test adopted in *Ayres*, stating the following: "[D]etermining whether government action is punishment requires consideration of the totality of circumstances, and particularly (1) legislative intent, (2) design of the legislation, (3) historical treatment of analogous measures, and (4) effects of the legislation." *Id.* at 147 (quotation marks and citations omitted); see also *Ayres*, 239 Mich App at 14-15. Applying these factors to the present case, we find that the SORA does not impose punishment.

Concerning the first factor, we note that the Legislature expressly set forth its intent with regard to the SORA in MCL 28.721a:

> The legislature declares that the sex offenders registration act was enacted pursuant to the legislature's exercise of the police power of the state with the intent to better assist law enforcement officers and the people of this state in preventing and protecting against the commission of future criminal sexual acts by convicted sex offenders. The legislature has determined that a person who has been convicted of committing an offense covered by this act poses a potential serious menace and danger to the health, safety, morals, and welfare of the people, and particularly the children, of this state. The registration requirements of this act are intended to provide law enforcement and the people of this state with an appropriate, comprehensive, and effective means to monitor those persons who pose such a potential danger.

The *Dipiazza* Court held that the Legislature's expressed intent was not indicative of a punitive statute because the statute was not meant to "chastise, deter, or discipline" offenders, but to assist in the prevention of and protection against future criminal sexual acts. *Dipiazza*, 286 Mich App at 148. However, the *Dipiazza* Court nevertheless reasoned that the expressed legislative intent did not favor viewing the defendant's regis-

tration as nonpunitive because "[t]he implied purpose of SORA, public safety, is not served by requiring an otherwise law-abiding adult to forever be branded as a sex offender because of a juvenile transgression involving consensual sex during a Romeo and Juliet relationship." *Id.* at 149. The *Dipiazza* Court also emphasized that if the defendant had been assigned to youthful trainee status after October 1, 2004, he would not have been subject to the public-registration requirements. *Id.*

The facts in this case are different. This case did not involve a consensual relationship, TD did not have his conviction discharged under the HYTA, and, unlike in *Dipiazza*, there was no pending or recent amendment that would affect TD's registration obligations and make them appear inequitable. TD committed a predatory sexual offense and poses a more serious danger to the community than the defendant in *Dipiazza*. We find that the first factor, legislative intent, weighs in favor of finding the registration requirements to be nonpunitive because the Legislature specifically set forth a nonpunitive intent in the statute.

When determining whether governmental action is punishment, the next factor to be considered is the design of the legislation. *Id.* at 147. The *Dipiazza* Court recognized that the federal courts, in *Kelley*, 961 F Supp at 1109, and *Lanni*, 994 F Supp at 853, found that the registration requirements were purely regulatory and remedial and that they did not impose any requirement or inflict suffering, disability, or restraint on the registered offender. *Dipiazza*, 286 Mich App at 149. The *Dipiazza* Court disagreed with that assessment, indicating that the SORA created public access to records that were previously sealed and in this way caused the loss of rights or privileges. *Id.* at 150. The Court stated:

Because MCL 762.14 is designed to prevent youthful
trainees from suffering a disability or losses of privileges
and rights except with respect to requiring registration,
and because there was no public dissemination of the sex
offender registry at the time, it seems clear the Legislature
did not intend to punish youthful trainees by requiring
them to register. The dissemination of nonpublic informa-
tion through SORA, however, had the opposite effect. The
later SORA amendment removing those assigned to trainee
status after October 1, 2004, appeared to rectify that issue.
[*Id.* at 150-151.] [4]

This reasoning does not apply to the present case. TD
was not subject to the guarantees contained in the
HYTA against civil disability or the loss of a right or
privilege, and his record was never nonpublic according
to MCR 3.925(D)(1), which states "Records of the
juvenile cases, other than confidential files, must be
open to the general public."[5] The second factor, the
design of the legislation, weighs in favor of finding that
the SORA's registration requirements do not constitute
punishment because the notification scheme is regula-
tory and remedial and does not cause a punitive release
of previously sealed information.[6]

---

[4] The HYTA specifically mandates that individuals given youthful
trainee status "shall not suffer a civil disability or loss of right or
privilege . . . ." MCL 762.14(2); see also *Dipiazza*, 286 Mich App at 150.
The HYTA then lists registration under the SORA as an exception to this
mandate. MCL 762.14(3); see also *Dipiazza*, 286 Mich App at 150. The
*Dipiazza* Court viewed this exception as an explicit recognition that the
SORA's registration requirements cause a disability and a loss of a right
or privilege, at least as applied to a youthful trainee. *Id.*

[5] According to MCR 3.925(E)(2)(c), TD's juvenile record must be
destroyed when he becomes 30 years old. However, the fact remains that
the record will have been public before that time.

[6] The *Dipiazza* Court also stated:

That defendant is suffering a disability and a loss of privilege is
further confirmed by the fact that there are not strict limitations on
public dissemination as there were in *Lanni*. The *Lanni* court noted
that the registry limited searches so that a person living in a

This Court next considers the historical treatment of analogous measures when determining whether governmental action is punishment. *Dipiazza*, 286 Mich App at 147. With regard to this factor, the *Dipiazza* Court stated:

> However, no analogous measure exists, nor is there an historical antecedent that relates to requiring a defendant to register as a sex offender when the defendant was a teenager engaged in consensual sex and the defendant was assigned to youthful trainee status after October 1, 1995, but before October 1, 2004. [*Id.* at 151.]

The *Dipiazza* Court's analysis was limited to the specific facts in that case. Therefore, the reasoning and analysis do not apply to TD; his offense was factually distinct.

In *Ayres*, this Court distinguished public registration from historical punishments such as branding, shaming, and banishment because public registration " 'does nothing more than provide for compilation of and public accessibility to information that is already a matter of public record.' " *Ayres*, 239 Mich App at 15, quoting *Kelley*, 961 F Supp at 1110.[7] *Ayres* further noted that the registration requirement does not impose any suffering, restraint, or obligation and stated:

> "The notification provisions themselves do not touch the offender at all. While branding, shaming and banish-

particular zip code can only search that zip code on the registry. *Lanni*, [994 F Supp] at 853. Consequently, the court in *Lanni* concluded that a law designed to punish a sex offender would not contain such strict limitations on dissemination. *Id.* Searches on the sex offender registry are no longer limited, however, to the searcher's zip code, but rather the registry provides a searcher with information about every person registered as a sex offender living in every zip code in the state. [*Dipiazza*, 286 Mich App at 151.]

We do not find that this change in the ability to search the registry transforms the SORA into a punitive scheme.

[7] We note, again, that the *Ayres* Court specifically adopted the analyses of *Lanni* and *Kelley* as its own. *Ayres*, 239 Mich App at 18.

ment certainly impose punishment, providing public access
to public information does not. . . . And while public noti-
fication may ultimately result in opprobrium and ostracism
similar to those caused by these historical sanctions, such
effects are clearly not so inevitable as to be deemed to have
been imposed by the law itself." [*Ayres*, 239 Mich App at 16,
quoting *Kelley*, 961 F Supp at 1110.]

We agree with this analysis and find that factor three,
the historical treatment of analogous measures, weighs
in favor of finding that the SORA's registration require-
ments are not punishment because they are not equiva-
lent to historical practices such as branding, shaming,
and banishment. *Ayres*, 239 Mich App at 15-16.

Finally, to determine whether the SORA imposes
punishment this Court must consider the effects of the
legislation. *Dipiazza*, 286 Mich App at 147. The public
sex offender registry (PSOR) states that its purpose is
"to better assist the public in preventing and protecting
against the commission of future criminal sexual acts
by convicted sex offenders." See *id.* at 151 (quotation
marks and citation omitted). The *Dipiazza* Court con-
cluded that registration was an unfair branding under
the facts of that case because the defendant was not
dangerous and because he had no true conviction by
virtue of the HYTA. *Id.* at 152. The Court also con-
cluded that the defendant had been unable to find
employment because of his status as a registered sex
offender and as a result had suffered emotional and
financial consequences. *Id.* at 152-153.

TD's offense did not involve a consensual act, and he
was not subject to the HYTA like the defendant in
*Dipiazza*. Accordingly, much of the reasoning in *Dipi-
azza* is inapplicable. Moreover, in analyzing the effects
of the legislation, the *Ayres* Court examined *Kelley* and
noted that certain consequences of public registration
such as harassment, assault, job loss, eviction, and

dislocation are only indirect results of public registra-
tion and are not consequences imposed by the law itself.
*Ayres*, 239 Mich App at 16, citing *Kelley*, 961 F Supp at
1110-1112. " 'Actions taken by members of the public,
lawful or not, can hardly be deemed dispositive of
whether legislation's purpose is punishment.' " *Ayres*,
239 Mich App at 16, quoting *Kelley*, 961 F Supp at 1111.
We adopt this reasoning and conclude that any conse-
quences flowing from registration are not punishment
in the present case.

Because the applicable factors weigh against a con-
clusion that the registration requirements of the SORA
constitute punishment as applied to TD, we hold that
the trial court erred in its ruling. We note that the
majority of the binding precedent holds that the SORA
does not impose punishment, and the *Dipiazza* Court's
holding to the contrary appears confined to the specific
facts of that case.

TD makes several additional arguments for uphold-
ing the trial court's conclusion that the SORA's regis-
tration requirements are unconstitutional as applied to
this case. TD's arguments have no merit. TD first
argues that the SORA's mandatory prohibition against
granting relief from the registration requirements to
certain offenders violates the doctrine of separation of
powers. We note, initially, that the separation-of-powers
doctrine does not mandate complete separation, and
overlap between the functions and powers of the
branches is permissible. *People v Conat*, 238 Mich App
134, 146; 605 NW2d 49 (1999). We further conclude that
the statutory requirement that trial courts not grant
relief from registration to offenders convicted of certain
delineated offenses does not violate the doctrine of
separation of powers. The SORA's requirement that
certain offenders not be granted relief from registration

is well within the Legislature's power; indeed, the Legislature does not have to grant any sex offender relief from registration. See *O'Donnell v State Farm Mut Auto Ins Co*, 404 Mich 524, 542; 273 NW2d 829 (1979) (discussing the Legislature's power to make choices affecting society). Moreover, courts may still pass on constitutional questions pertaining to the SORA, as we do in our opinion today.

Next, TD argues that the SORA's registration requirements do not bear a rational relationship to any legitimate governmental interest. Rational-basis review "tests only whether the legislation is reasonably related to a legitimate governmental purpose." *TIG Ins Co, Inc v Dep't of Treasury*, 464 Mich 548, 557; 629 NW2d 402 (2001). The SORA was enacted pursuant to the state's police powers to prevent and protect against the commission of criminal sexual acts by convicted sex offenders, MCL 28.721a, and its purpose involves a legitimate governmental interest, see *Golba*, 273 Mich App at 620 ("SORA is a remedial regulatory scheme furthering a legitimate state interest of protecting the public[.]"). Further, a statute is constitutional "if the legislative judgment is supported by any set of facts, either known or which could reasonably be assumed, even if such facts may be debatable." *TIG Ins*, 464 Mich at 557 (quotation marks and citation omitted). It is rational to require registration of sex offenders to enable the public to protect themselves, even if the risk of recidivism could be considered low in some cases.

TD next argues that the law is arbitrary and capricious. However, TD has waived this argument by failing to provide pertinent legal citations indicating under what circumstances a court may invalidate a statute for being arbitrary and capricious. See *In re Contempt of Barnett*, 233 Mich App 188, 191; 592 NW2d 431 (1998)

(discussing waiver). At any rate, the Legislature made reasoned policy decisions in crafting the law, and we find nothing arbitrary or capricious in its wording.

Lastly, certain amici curiae have filed a brief to argue that the SORA's registration requirements should be found unconstitutional as applied to TD because they are contrary to numerous public policies. Policy decisions, however, are for the Legislature. *In re Juvenile Commitment Costs*, 240 Mich App 420, 440; 613 NW2d 348 (2000).

Reversed.

M. J. KELLY, J., concurred with METER, P.J.

RONAYNE KRAUSE, J. (*concurring*). I concur with the majority because the majority correctly explains that registration under the Sex Offenders Registration Act (SORA), MCL 28.721 *et seq.*, is not "punishment" under Michigan law. Therefore, the trial court impermissibly determined that it constituted "cruel and unusual punishment" in this case. I write separately because I believe the trial court expressed very well-founded concerns that merit further discussion.

Obviously, I do not take any exception to the purposes and legitimacy of SORA's registration requirements. Indeed, I expressly approve of it. See *People v Golba*, 273 Mich App 603, 620; 729 NW2d 916 (2007). My concern is with the public nature of the registration here for a respondent who was charged and "convicted" as a juvenile. Michigan has a public policy, as reflected in our history and our statutes, of protecting juveniles and treating them specially, even when finding them responsible for reprehensible acts. Courts may (and in some cases must) waive jurisdiction and, as a result, minors may be prosecuted as adults. See *People v Conat*, 238 Mich App 134, 139-143; 605 NW2d 49 (1999). However, unless a waiver

occurs, "our justice system [distinguishes] between juvenile delinquency and adult criminal conduct." *In re Wentworth*, 251 Mich App 560, 568; 651 NW2d 773 (2002).

"Evidence regarding the disposition of a juvenile under [chapter XIIA of the Probate Code] and evidence obtained in a dispositional proceeding under [chapter XIIA of the Probate Code] shall not be used against that juvenile for any purpose in any judicial proceeding except in a subsequent case against that juvenile under [chapter XIIA of the Probate Code]." MCL 712A.23.[1] The purpose of this statute is to protect minors from the public being aware of immature mistakes.[2] *People v Smallwood*, 306 Mich 49, 53; 10 NW2d 303 (1943); *Wentworth*, 251 Mich App at 568. The goal of rules sealing or expunging juvenile records "is to prevent a juvenile record from becoming an obstacle to educational, social, or employment oppor-

---

[1] While TD's "general" records would be "open to the general public," MCR 3.925(D)(1), I disagree with the majority's conclusion that there is no substantive difference between a file available upon request by someone who knows of its existence and takes the trouble to request it and a public database on the Internet available to any idly curious person with no investment of time or energy whatsoever and possibly even by accident. There are degrees of openness, and obscurity is itself a measure of privacy protection, albeit not a complete one.

[2] The trial court found that the assault at issue in this case was more in the nature of juvenile horseplay that got carried away than truly predatory sexual conduct and that it was a fairly low-severity offense. I am unsure that I would be so dismissive of an attack that left the victim so traumatized. But the trial court is in the best position to evaluate the demeanor and credibility of witnesses before it, and it found that TD understood the gravity of his offense, had been impressively courteous and respectful, and presented a very low risk for recidivism. More tellingly, the prosecutor conceded that TD had been offered a plea agreement that would *not* have required him to register as a sex offender, and indeed the prosecutor was of the view that such registration was unnecessary. However, my view in this case is based strictly on TD's status as a juvenile offender. Had TD lacked any mitigating characteristics, the prosecutor could have moved to have him waived to adult court, MCL 712A.4, obviating the instant discussion. The prosecutor did not even attempt to do so here.

tunities." *People v Smith*, 437 Mich 293, 303; 470 NW2d
70 (1991) (opinion by LEVIN, J.). Indeed, "the paramount
purpose of the juvenile section of the Probate Code is to
provide for the well-being of children." *In re Macomber*,
436 Mich 386, 390; 461 NW2d 671 (1990). In fact, pro-
ceedings against juveniles are not even considered crimi-
nal proceedings. *Wentworth*, 251 Mich App at 568.

Registration cannot violate the prohibition against
cruel or unusual punishment unless it is, in fact, "punish-
ment." *In re Ayres*, 239 Mich App 8, 14; 608 NW2d 132
(1999). While I agree with the majority that *Ayres* remains
valid and binding law, I think it is a closer question than
does the majority, because at the time of the trial in *Ayres*,
the registration database was only available to the public
during normal business hours through law enforcement
authorities, and information about registrants who had
been juvenile offenders was not available to the public at
all. See *Ayres*, 239 Mich App at 12, 18-19. Although the
*Ayres* Court did adopt the analyses of federal courts
holding that sex offender registration and notification was
not cruel and unusual punishment, the Court further
stated that

> [i]n light of the existence of strict statutory safeguards that
> protect the confidentiality of registration data concerning
> juvenile sex offenders, we conclude that the registration
> requirement imposed by the act, as it pertains to juveniles,
> neither "punishes" respondent nor offends a basic premise
> of the juvenile justice system—that a reformed adult
> should not have to carry the burden of a continuing stigma
> for youthful offenses. [*Id.* at 21.]

In fact, the *Ayres* Court deemed highly important to its
conclusion that registration was not constitutional "pun-
ishment" the "fact that public access to registration data
regarding juveniles is foreclosed . . . ." *Id.* at 19. But in
September 1999, SORA was amended to create a public,

Internet-accessible registry available to anyone, and that registry includes juvenile offenders. *People v Dipiazza*, 286 Mich App 137, 142-143, 146-147; 778 NW2d 264 (2009). I believe that the majority does not give enough weight to the burden that public registration places on registrants. See *id.* at 152-153.[3]

However, the mere fact that a state action is onerous does not, by itself, make that action a "punishment." As I have said, the purpose of SORA is noble and simply cannot be carried out without burdening some individuals. "Unfortunately the scheme has never yet been devised by human invention by which the power to do great good has not been mingled with the power to do some evil." *People v Gallagher*, 4 Mich 244, 255 (1895). The purpose of SORA is to protect the public and help people to protect themselves from predators, thereby reducing recidivism, empowering people, promoting safety in general, and preventing one of the more horrific kinds of crime in particular. It does not purport to have any rehabilitative value for registrants, but at the same time, any harm to registrants is simply incidental. I do not believe we should therefore pretend that no such harm transpires, but the critical problem is simply that registering people who are *demonstrably not dangerous* makes it more difficult conceptually to regard SORA as the nonpunishment tool it should be.

---

[3] However, I agree that *Dipiazza* is critically distinguishable because the registrant in *Dipiazza* was technically not convicted of an offense for which registration would have been required, and he factually did not even commit a nonconsensual act. I think it is highly significant that the prosecutor here did not believe TD really needed to be on the registry and that TD was found responsible as a juvenile rather than convicted as an adult. But he has been technically "convicted," MCL 28.722(a)(*iii*), and while this Court should defer to the trial court's factual findings, including that TD engaged in more of a prank than a predation, what he did was not consensual. TD simply has a record that the registrant in *Dipiazza* did not.

This is thrown into sharp relief here, where the burdens of registering run directly contrary to the purposes of our laws regarding juveniles. Even further, when there is good reason to find that the registrant is not a predator and is highly unlikely to be a sexual offender again in the future, requiring his or her registration *actually undermines* the important purpose underlying SORA. It would encourage members of the public to demonize and fear a person who is, it seems, at least no more dangerous than any other member of the public.[4] Simultaneously, it would encourage members of the public to trivialize the predators who really *are* dangerous. Compelling registration of individuals who can with some degree of reliability be determined not to be threats thereby reduces SORA—at least to some extent—from a tool that empowers people and communities to help protect themselves to a pointlessly life-destroying piece of "security theater."[5] Divesting the trial court of the power to relieve persons such as TD from the requirement of registration makes the world *less* safe for all of us.

Nevertheless, this is a policy decision. I believe very strongly that SORA is a vital and powerful tool. I am concerned that its efficacy is drastically impaired by the registration of people known to not be likely predators and of juvenile offenders who were not deemed sufficiently dangerous to warrant even an attempt to have them waived to adult court; the latter undermines the purposes

---

[4] Again, the prosecutor could have moved to charge TD as an adult because he was at least 14 years old and charged with what would have been a felony for an adult. MCL 712A.4. Had TD been charged with first-degree criminal sexual conduct, the prosecutor could have charged him as an adult without seeking a waiver from the trial court. MCL 764.1f.

[5] "Security theater" refers to undertakings that provide only a feeling of security instead of providing real security. See Schneier, *Beyond Fear: Thinking Sensibly About Security in an Uncertain World* (New York: Copernicus Books, 2003), pp 38-40.

of our juvenile justice system, as well. I strongly urge our Legislature to consider giving our trial courts the means to enhance SORA by exercising discretion to remove from the registry or decline to register people who can be shown to be not dangerous. But I cannot agree with the trial court that TD's registration here constitutes cruel and unusual punishment; it is simply unwise.